CASE 110—PETITION ORDINARY TRANSFERRED TO EQUITY— JUNE 16.

# O'Connor & McCulloch v. Henderson Bridge Company.

# Henderson Bridge Company v. O'Connor & McCulloch.

APPEALS FROM LOUISVILLE LAW AND EQUITY COURT.

1. BURDEN OF PROOF—IRREGULARITY IN ORDER OF INTRODUCTION OF TESTIMONY.—Where the court ruled that defendant had the burden of proof and should first produce its evidence, which was done, but at conclusion of the whole evidence changed its ruling so as to give plaintiffs the concluding argument to the jury, there was, in meaning of section 340 of the Civil Code, such "irregularity in the proceedings of the court" as prevented defendant having a fair trial, for while the burden of proof in the whole case was on the plaintiffs, and they would have been entitled to conclude the argument if the court had ruled them to first produce their evidence, yet in view of the large amount of complicated or contradictory testimony and the unusual length of the trial the diverse rulings mentioned were prejudicial to defendant, and the court did not err in granting it a new trial.

O'Connor & McCulloch v. Henderson Bridge Co.

2. THE RIGHT OF TRIAL BY JURY CAN NOT BE IMPAIRED OR MODIFED BY LEGISLATIVE ENACTMENT. Therefore, whether this action was properly transferred from the ordinary to the equity docket depends, not upon the amendment of April 29, 1890, to section 10 of the Civil Code of Practice, but upon the proper interpretation and application of the language of section 7 of the Constitution, which provides that "the ancient mode of trial by jury shall be held sacred and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution." But that clause of the Constitution should not be so strictly construed or rigidly adhered to as to prevent in any case due and proper administration of justice.

3. A COURT OF EQUITY HAS CONCURRENT JURISDICTION IN MATTERS OF ACCOUNT, which should be exercised when otherwise there may be serious doubt as to the true state of the accounts or difficulty in satisfactorily adjusting them and safely striking a balance. Therefore, although this action was brought to recover damages, yet as the criterion of recovery, as fixed by this court on a former appeal, required the consideration of various items of account as to each of which there was much contradictory evidence requiring prolix mathematical calculations in estimating values and amounts, and the special commissioner to whom the case was referred appears to have been engaged under the order of reference for the better part of nine months, the transfer of the action to equity should not be regarded a reversible error.

4. INTEREST.—In this action by contractors to recover of defendant bridge company damages for an illegal attempt to annul a contract made between the parties for building foundations and piers of a railroad bridge and forcibly driving plaintiffs from the work, this court having expressly held, upon a former appeal from judgment on the verdict of a jury, that plaintiffs were entitled in any event to recover fifteen per cent of amount of their earnings prior to November 30, 1883, retained by the company, the lower court erred in overruling the motion made upon return of the case from this court to have judgment rendered therefor, the amount not being disputed. And, therefore, as the contractors were entitled to judgment for that sum and interest from November 3, 1883, to December 1, 1889, when the motion was made, judgment for the aggregate of principal and interest must, upon return of the case, be entered as of the latter date, with interest therefrom.

5. THE DEFENDANT WAS NOT ENTITLED TO ANNUL THE CONTRACT under a clause which gave it the right to annul without notice in case the contractors did not well and truly, from time to time, comply with and perform all the terms stipulated, the defendant itself being in default by reason of failure to estimate and pay for work done and materials delivered, without which the contractors could not further comply with and perform all the terms of the contract. And, cer

tainly, a chancellor would, under the circumstances, hold it liable for value of work done and materials and working plant.

6. THE PLAINTIFFS WERE NOT ENTITLED TO ANYTHING ON ACCOUNT OF PROSPECTIVE PROFITS, as it is manifest, in view of the ascertained cost to the company of completing the work, that the contractors would not have made any profit.

7. RESERVATION IN CONTRACT BUILDING OF RIGHT TO ANNUL.—The defendant has no cause of action against plaintiffs on account of their alleged failure to progress with the work according to an agreed programme, or failure to comply with the contract in any respect, as the remedy provided for the company in case of non-compliance with the contract by the contractors was the right to annul the contract in either one of the three conditions stated therein, and in one of them to have unpaid part of the work done forfeited.

HUMPHREY & DAVIE for O'Connor and McCulloch.

1. The Bridge Company will not be heard to claim that it had the right to annul the contract on account of the contractor's delay, in view of the fact that it had itself made default in making monthly estimates of, and promptly paying for, the work as done. When the Bridge Company violated its promise to make payment, the contractor was under no duty to push the work, or put more money or labor in it ; and the right of annulment ceased. (Canal Co. v. Gordon, 6 Wall., 561; Faunts v. Burks, 16 Pa. St., 469; Grand Rapids v. Vandusen. 29 Mich., 444; Howard v. Delaware, 1 Gill., 343; Chesapeake v. Randall, 1 Harrington, 310; Hale v. Trout, 35 Cal., 24; Philips v. Construction Company, 91 U. S., 646; Stringtown v. Riley, 8 Ky. Law Rep., 267.)

2. In the jury trial below, the Bridge Company asked to introduce its evidence first, and the court allowed it, over plaintiff's objection. As this gave the Bridge Company the advantage of making the first impression on the jury, and as the question of the mode of introducing evidence is largely a matter for the discretion of the court below, the verdict should not have been set aside on this account. (Code, sec. 317; Montgomery v. Swindler, 32 Ohio St. R., 225; Andrews v. Hayden, 88 Ky., 457.)

3. An erroneous ruling by the court below merely as to which side shall first introduce evidence, is not a ground for setting aside the verdict. (Thompson on Trials, sec. 344; Geech v. Ingall, 14 M. & W., 99; Brandford v. Freeman, 5 W. H. & G., 734; Ashby v. Bates, 15 M. & W., 589; Blake v. Powell, 26 Kan., 327; Preston v. Walker, 26 Ia., 207; Scott v. Hull, 8 Conn., 303; Code, secs. 134, 338, 756.)

4. This is distinctively a common law action, as has been recognized by the two jury trials already had, and by the former opinion of this court, remanding it for a "new trial." The order of the court below, transferring it to the equity docket, was erroneous, as depriving plain-

tiffs of their right to trial by jury. That the evidence is voluminous, or the facts complicated, does not affect this question. (Flint River v. Roberts, 48 Am. Dec., 178; Const. of Ky., sec. 7; McMartin v. Bingham, 27 Ia., 237; Johnson v. Wallace, 7 Ohio, 392; Planters National Bank v. Batchelor, 78 Ky., 435; Meek v. McCall, 80 Ky., 373; Blight v. Alexander, 4 J. J. Mar., 96; Grace v. Park, 5 J. J. Mar., 57; Bowan v. Chase, 94 U. S., 812; Porter v. Spence, 2 Johns. Chy., 171.)

5. The legislative act of April 29, 1890, authorizing the transfer to equity of a case like this, was passed *pendente lite*, for the purpose of affecting this case; and it was unconstitutional, as to this case, as an attempted legislative interference with pending litigation. (Flint River Co. v. Roberts, 48 Am. Dec., 178; Thweat v. Bank, 81 Ky., 8; Gaines v. Gaines, 9 B. M., 295; Alison v. Harrods, 9 Bush, 248.)

6. If the case be treated as an equity case, then the amount reported by the commissioner should be affirmed by this court. In a case like this the amount due is to be arrived at by reasonable estimates, and precise itemization is not required. (Sedgwick on Damages, secs. 170, 173; Sutherland on Damages, vol 1, page 113; Blagen v. Thompson, 81 Pac., 647.)

HELM & BRUCE FOR HENDERSON BRIDGE COMPANY.

I. The trial court properly sustained the motion for a new trial after the second verdict in favor of plaintiff, as several errors were permitted to the prejudice of defendant, as follows, to-wit:

1. The court gave plaintiffs the burden of proof and allowed their counsel to make the concluding argument to the jury, whereas the burden was properly on defendant, because if no evidence had been introduced plaintiff would have recovered a material sum, and thus defendant would have been "defeated." (Code, section 526.) Where the burden is on the defendant on the issue as to the *cause of action*, it will not be given to plaintiff because he has to introduce proof of damage. (L. & N. R. Co. v. Brown, 13 Bush, 478.) Where A is in possession of property and B *forcibly ejects him*, thus requiring A to bring a suit to recover possession or damages for the forcible eviction, the burden of proof as to right of possession is on B, the defendant. (Sowder v. McMillan, 4 Dana, 462–3; Ratcliffe v. Bellfontaine Iron Works, 87 Ky., 562.)

2. Even assuming the burden of proof was properly on plaintiffs, yet the court first ruled that it was on defendant, and its evidence was accordingly introduced first; then, after a very long trial, including a three weeks' adjournment for Christmas, the court changed its ruling and gave the concluding argument before the jury to plaintiff's counsel. This was an "irregularity in the proceedings of the court . . . by which the party (defendant) was prevented from having a fair trial" within the meaning of section 340, subsection 1 of the Civil

Code, the manifest purpose of which Code provision is to give to the trial court that scope and discretion referred to in Houston v. Kidwell, 83 Ky., 304, to enable it to grant a new trial whenever anything has occurred during the course of the trial on account of which the lower court thinks a fair trial has not been had.   (See also Mahan v. Jane, 2 Bibb, 33.)

3. The court admitted incompetent testimony to the effect that before the contract was made, officers of the defendant company had expressed the opinion that there was a profit in the contract.   This was not competent on the ground of being expert testimony, because that can not be proved by hearsay. (People v. Millard, 53 Mich., 63.) Nor was it competent as an "admission," because an admission, to be competent, must relate to a *present or past state of facts*, and not be an opinion as to future events (2 Wharton on Evidence, section 1076); nor was it competent for the purpose of contradicting the company's officers as witnesses, because they had not been examined as to the statements imputed to them (Code, section 598).   And the court also admitted incompetent testimony to the effect that the engineer of the defendant company had formerly been the engineer of construction of a different work, and had conducted it regardless of economy.

It is impossible to tell what effect incompetent testimony may have had on the jury, and for error in admitting it a new trial was properly granted.   (Daniel v. Nelson, 10 B. Mon., 317.)

II. The court, after setting aside the second verdict, properly transferred the case to equity and referred it to a commissioner, because it involved a consideration of such a multitude of facts and complicated accounts that no jury could intelligently determine it; and the remedy at law was therefore totally inadequate, and the justice of the case could not appear.

In such a case a transfer to equity is proper.   (1 Story's Eq., secs. 442, 451, 457; Fowle v. Lawrason, 5 Pet., 495; Porter v. Spencer, 2 Johns. Chy., 169; Board of Supervisors of Dane County v. Dunning, 20 Wis., 216; Darthey v. Clemens, 6 Beavan, 169; Breckinridge v. Brooks, 2 A. K. Marshall, 335; Power v. Reeder, 9 Dana, 6; Neal v. Keel, 4 Monroe, 162.)

The cases of Bachelor v. Planters' National Bank, 78 Ky.;  McMartin v. Bingham, 27 Iowa; Smith v. Brown, 3 How. Pr., 809; Swift v. Wells, 2 How. Pr., 78, and Sharp v. Mayor, 18 How. Pr., 213, do not militate against the proposition above asserted.

The Kentucky statute authorizing transfers to equity where the case involves accounts so complicated or such details of facts as to render it impracticable for a jury to intelligently try the case (1st Acts 1889–90, p. 115) is constitutional; but the transfer in such a state of case could be made independently of the statute.

III. The contract sued on by plaintiffs was lawfully annulled by defendant, because plaintiffs failed to progress with the work with sufficient

O'Connor & McCulloch v. Henderson Bridge Co.

speed to complete it within a reasonable time after the contract time was abrogated (Henderson Bridge Co. v. O'Connor & McCulloch, 88 Ky., 328). In fact they practically abandoned the work by refusing, in effect, to proceed unless conditions not authorized by the contract were acceded to.

IV. The amounts fixed by the judgment of the lower court, if the plaintiffs are entitled to any recovery at all, were fixed according to the principles settled by this court on the first appeal and should not be disturbed. But defendant having lawfully annulled the contract sued on, on account of plaintiff's defaults, was damaged to a greater extent than the amounts allowed plaintiffs in the judgment, and therefore the judgment should have been in favor of defendant on its counterclaim.

SAME COUNSEL IN PETITION FOR REHEARING.

I. The amounts allowed plaintiffs by the commissioner and adopted by this court on the second appeal were fixed in violation of the principles fixed by this court on the first appeal, which principles constitute the settled law of this case, whether right or wrong.

II. A motion for judgment for any part of a claim, as uncontroverted, can never be sustained when there is a counterclaim in the case for an amount exceeding the amount of plaintiff's claim, which is otherwise uncontroverted.

III. Where both parties appeal from a judgment, one party superseding it, and the judgment is reversed on the appeal of either, no damages can be allowed on the supersedeas bond, for it can not be said that the judgment has been affirmed, though no error may have been found to the prejudice of the party superseding. (Wade v. First National Bank of Franklin, 11 Bush, 701; L. & N. R. Co. v. Earl's Adm'r, 94 Ky., 368.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

This action was instituted in August, 1884, by O'Connor & McCulloch to recover of Henderson Bridge Company damages for an illegal attempt to annul a contract made in December, 1881, between the parties for building foundations and piers of a railroad bridge across Ohio river at Henderson, and forcibly driving plaintiffs from the work while engaged at it.

Upon trial of the case in December, 1886, the jury found a verdict in favor of plaintiffs for $86,805.73 and

interest thereon from April 9, 1884, when they were forced to quit the undertaking. But upon appeal this court, for errors of law alone, and without determining issues of fact involved, reversed the judgment rendered in pursuance of that verdict and remanded the case for new trial. (Sec. 88, Ky., 303.) January 24, 1890, another jury found a verdict in favor of plaintiffs for $148,633.61, being principal sum and interest thereon to that date. But upon motion and grounds filed the lower court, September 29, 1890, set aside that verdict and ordered a new trial. On this same day, however, an order was made transferring the case to equity; and subsequently the chancellor referred it to a special commissioner to inquire and report as to matters specifically mentioned in the order of reference, being governed by stenographic record of evidence heard and instructions given on the preceding jury trial.

November 30, 1891, the commissioner reported as his conclusion from evidence and instructions that plaintiffs were entitled to recover the principal sum of $104,427.88 and interest to that date, making an aggregate of $153,-168.51. But exceptions to the report were sustained to the extent of reducing the principal sum to $61,536.55, for which, with interest from April 7, 1892, judgment was, July 7, 1892, rendered.

Both plaintiffs and defendants have appealed from that judgment—the latter superseding it. It is contended, in behalf of the former, that not only the judgment but also the order setting aside the verdict of January 24, 1890, should be reversed, effect of which would be revival of the verdict and entry of judgment for amount of it. But, it seems to us, the lower court did not err in setting

aside the verdict and granting a new trial.   For, without referring to other grounds filed, the order of proceeding in the trial was directly contrary to subsection 3, sec. 317, Civil Code, which provides that " the party on whom rests the burthen of proof in the whole action must first produce his evidence; the adverse party will then produce his evidence." For the court first ruled that defendant had the burthen of proof and should first produce its evidence, which was done, but at conclusion of the whole evidence changed its ruling so as to give plaintiffs benefit of concluding the argument to the jury.

We think the burthen of proof in this whole case was on plaintiffs, and there could be no question of their right to conclude the argument, nor any ground of complaint by defendant it was awarded to them, if the court had, as required by the Civil Code, ruled them to first produce their evidence.   But, in view of the very large amount of complicated and contradictory testimony produced by the respective parties, and unusual length of the trial, diverse rulings mentioned must be regarded as in meaning of section 340, such " irregularity in the proceedings of the court" as prevented defendant having a fair trial. For it appears that after defendant had produced its evidence, which required the time from December 12th, when the trial began, to 19th, and two days had been used by plaintiffs, the court took a recess for about twenty-four days—the jury being in the meantime dispersed.   So that on January 17, 1890, when plaintiffs' evidence, that had consumed the three preceding days, was concluded, it had been more than three weeks, and when the verdict was rendered, January 24th, it had been more than a month since any of defendant's evidence in

chief was heard by the jury. To force a party, under such circumstances, to first produce his evidence, and yet deprive him of benefit of concluding argument to the jury, which is of great advantage in such a case as this, is not giving him a fair trial.

Though counsel for plaintiffs below contend it was error to sustain exceptions to report of the special commissioner, the principal reason urged in argument for reversal of the judgment is that the chancellor has no jurisdiction, the order transferring the action to equity being in violation of section 8, article 13 of the old (which is the same as section 7 of the present) Constitution, as follows: "The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution."

If the judgment should be reversed on that ground, the whole proceeding in equity would have to be disregarded and mandate go for another and third trial by jury. It is, therefore, necessary to now consider and determine the question of jurisdiction. To sustain the order transferring the action to equity, counsel for defendant below refer to the following statute, passed April 29, 1890: "That section 10 of the Civil Code of Practice be, and the same is here, amended as follows: The court may, in its discretion, on motion of either party, or without motion, order the transfer of an action from the ordinary to the equity docket, or from a court of purely common law to a court of purely equity jurisdiction, whenever the court before which the action is pending shall be of the opinion that such transfer is necessary because of the peculiar questions involved, or because the

case involves accounts so complicated or of such great detail of facts as render it impracticable for a jury to intelligently try the case."

If the court was, at date of that statute, without authority to transfer an action from the ordinary to equity docket under circumstances and for causes therein recited, it is still powerless in that respect, for the right of trial by jury can not be impaired or modified by legislative enactment. Therefore, whether this action was properly transferred depends not upon that statute, but proper interpretation and application of the language of the clause of the Constitution quoted.

That clause never was intended to be so strictly construed or rigidly adhered to as to prevent, in any case, due and proper administration of justice. Accordingly, as said in Story's Equity, vol. 1, sec. 442, "courts of equity have, for a long time, exercised a general jurisdiction in all cases of mutual accounts upon the ground of the inadequacy of the remedy at law." And in section 451 is this language: "Lord Redesdale has justly said that in a complicated account a court of law would be incompetent to examine it at *nisi prius* with all the necessary accuracy. This is the principle on which courts of equity constantly act by taking cognizance of matters which, though cognizable at law, are yet so involved with complex accounts that it can not be properly taken at law; and until the result of the account is known the justice of the case can not appear."

This court has uniformly held that a court of equity has concurrent jurisdiction in matters of account and "should be exercised when otherwise there may be serious doubt as to the true state of the accounts, or difficulty in

satisfactorily adjusting them, and safely striking a bal-
ance." (Breckinridge v. Brooks, 2 A. K. M., 335; Bruce
v. Burdet, 1 J. J. M., 80; Power v. Reeder, 9 Dana, 6.)

But in every case of interposition of a court of equity
in such actions there must exist a necessity arising from
failure of remedy at law to afford justice. And extent
of equitable jurisdiction in actions for an accounting
and when to be exercised is thus stated in Pomeroy's
Equity Jurisprudence, sec. 1421: " The instances in
which the legal remedies are held to be inadequate and,
therefore, a suit in equity for an accounting proper, are:
1. Where there are mutual accounts between the plaintiff
and the defendant—that is, where each of the parties has
received and paid on account of the other. 2. Where the
accounts are all on one side but there are circumstances
of great complication or difficulties in the way of adequate
relief at law. 3. Where a fiduciary relation exists between
the parties, and a duty rests on the defendant to render
an account."

Though this action was brought to recover damages,
the criterion of recovery by the contractors was held in
former opinion to have been fixed in the contract as fol-
lows: " First, the value of such of their derrick-tools
and other plant as were in use at the time, not already
paid for; second, the value of the materials then on hand
or delivered or ready for delivery subsequent to Novem-
ber 30, 1883; third, the reasonable value of unestimated
work done after that date; fourth, the amount of 15
per cent earnings retained, the last two items to be paid
for in any event; fifth. interest on whole amount from
April 9, 1884; sixth, whatever profits it may be shown

could have been made, if appellees had been permitted to complete the work."

There is controversy between the parties as to each of these subjects, except amount of earnings retained. A great deal of evidence was produced, much of it contradictory, and prolix mathematical calculations made in estimating values and amounts, about which there was great difference between witnesses. The special commissioner appears to have been engaged under the order of reference for better part of nine months, and how tedious and difficult it was for him to reach a conclusion, the following sworn statement he made shows : "I have been practicing as an attorney-at-law since 1866, and had considerable experience in settlement suits, but have never been engaged as attorney or commissioner in one with more complications, or which required greater labor to understand and report on intelligently than this."

Although, as it turned out there was not, considering amount involved, a great difference between the principal sum found due the contractors by the special commissioner and what was found by the second jury, still transfer of the action to equity should not be regarded a reversible error.

The action being then properly in equity the next inquiry is whether the chancellor rendered judgment for the correct amount?

In the former opinion of this court it was expressly held that the contractors were, in any event, entitled to recover 15 per cent of amount of their earnings prior to November 30, 1883, retained by the company, amount of which the record shows is $33,760.24. And the lower court erred in overruling the motion made upon return

of the case from this court to have judgment rendered therefor. For as the amount was not disputed, and right to it had been determined, section 380, Civil Code, applied, being as follows :

" If only a part of a claim be controverted, judgment may, at any time, be rendered for the part not controverted." As, therefore, the contractors were entitled to judgment for that sum, and interest from November 3, 1883, to December 1, 1889, when the motion was made, judgment for the aggregate of principal and interest must, upon return of the case, be entered as of the latter date therefor, and bearing interest therefrom. According to the former opinion recovery for value of derrick-tools and other plant, of materials on hand, and for whatever profit the contractors could have made, if permitted to complete the work, depends upon whether the annulment of the contract, attempted by the company in February, 1884, and consummated by force April 9, 1884, was lawful. We will, therefore, first determine that question.

By terms of the contract the company had the right to annul by giving the contractors one month's notice; but in that case the latter would have had the unconditional right to payment in full for all materials delivered, work done, and derrick-tools or other working plant. But the company undertook to annul under that clause of the contract which authorized it arbitrarily done when it appeared to its engineer the work did not progress *with sufficient speed or in a proper manner*, to be followed by forfeiture of the unpaid part of the value of the work done by the contractors. In the former opinion, however, it was held the forfeiture had been waived and lost. The precise

question now is, whether the right to annul without notice
existed under another clause which authorized it in case
the contractors did not well and truly from time to time
comply with and perform all the terms stipulated.   As a
question of fact, under instructions as to the law appli-
cable, both juries and the special commissioner have found
the right to annul at the time and in the manner
attempted did not exist.   Besides, upon reconsideration,
we think that as the company was in default by reason
of failure to estimate and pay for work done and materi-
als delivered, without which the contractors could not
further comply with and perform all the terms of the
contract, it had no right to annul.   Certainly a chancellor
would, under the circumstances, hold it liable for value
of work done and materials and working plant.   The
special commissioner reported the value of material de-
livered and work done subsequent to November 30, 1883,
that had not, as required by the contract, been estimated
or paid for, including the plant at a stone-quarry, to be
$36,909.15.   The chancellor valued the same at only
$6,886.00.   The commissioner reported amount of profit
the contractors would have made, if permitted to com-
plete the work, at $33,758.00.   The chancellor was of
opinion no profit would have been made.   The commis-
sioner reported the whole amount due to the contractors,
including $33,760.24, amount of earnings retained by the
company, to be $104,437.39, bearing interest from April
9, 1884.   The chancellor fixed the principal sum, includ-
ing percentage of earnings retained, at $61,536.55, not
bearing interest, however, until April 9, 1892.

In our opinion the evidence does not satisfactorily show
the contractors would have made any profit, which at

best is conjectural. The contract price of the whole
work was $562,632.00. The entire outlay by the com-
pany that undertook to complete the bridge.after annul-
ling the contract, was about $145.000.00 in excess of that
sum, without including estimates for work done and
materials furnished subsequent to November 30, 1883,
which are subjects of the present litigation. It seems to
us incredible, in view of the actual and ascertained cost
to the company, that the contractors could or would
·have made any profit if permitted to complete the work.

But, leaving out of view the matter of profit, the prin-
cipal sum found by the commissioners is less by about
$15,000.00 than that found by the first jury, that does not
appear to have estimated any profit, and about $8,000.00
less than what was found by the second jury, that does
appear to have estimated the profit. But considering the
time fixed by the chancellor for interest to begin running,
his judgment is for less than half what the verdict of
·either jury would now amount to, and about $45,000.00
less than the commissioner reported.

It is apparent only approximate value and amount of
work and materials for which the company is required to
pay the contractors can be ascertained, because witnesses
·differ not only in their estimates and calculations, but as
to facts of which they profess to have personal knowl-
edge. But, without going into detail, we are satisfied the
chancellor underestimates the amount to which the con-
tractors are entitled, and his conclusion can not be
·adopted unless, without good reason, we disregard not
·only the finding of each jury, but also report of the
special commissioner, who has shown marked capacity as
·both accountant and lawyer, and devoted very much

more time and attention to the investigation than can be expected or required of the judge of a court.

We therefore think his report ought to have been confirmed, except as respects amount allowed the contractors for possible profit; in that he is in error. And upon return of the case judgment must be entered in favor of the contractors as of July 7, 1892, for $36,909.15, with interest from April 9, 1884, to that date, value of work and materials subsequent to November 30, 1883, as well as judgment for percentage of earnings retained as before and in the mode directed.

In our opinion, Henderson Bridge Company has no cause of action against O'Connor & McCulloch by reason of their alleged failure to progress with the work according to an agreed programme, or failure to comply with the contract in any respect. The remedy provided for the company in case of non-compliance with the contract by the contractors, and manifestly the only remedy contemplated by the parties, was the right to annul the contract in either one of the three conditions stated therein, and in one of them to have unpaid part of the earnings forfeited.

Wherefore, on appeal by plaintiff below, the judgment is reversed and case remanded for proceedings consistent with this opinion. And, on appeal by defendants below, the judgment is affirmed with damages.

---

To a petition for rehearing filed by counsel for Henderson Bridge Company, Judge Lewis delivered the following response of the court:

It having been found by two juries and the special commissioner acting under instructions of court, and not

O'Connor & McCulloch v. Henderson Bridge Co.

only adjudged by the lower court at each trial by jury and of exceptions to report of the commissioner, but finally determined by this court, that Henderson Bridge Company had no right to annul the contract without notice, as it did forcibly do, the only subject for inquiry from beginning of this litigation has been as to amount of recovery the contractors were entitled to.

In the first opinion of this court it was distinctly determined the contractors were entitled unconditionally to amount of earnings retained, being 15 per cent. In the opinion, which the company now seeks to have reconsidered or modified, it was determined the contractors were not entitled to recover any sum on account of possible and contemplated profits on the work; and to that extent judgment of the lower court was concurred in, and finding of the commissioner disallowed.

It thus follows that the main question before this court, one of fact, is whether value of tools and implements on hand April 9, 1884, not already paid for, of materials delivered or ready for delivery subsequent to November 30, 1883, and of unestimated work done after that date, as found and reported by the special commissioner to be $36,909.15, should be accepted or discarded to the extent it was done by the lower court.

For reasons stated in the opinion, that estimate was adopted instead of the one made by the lower court. No argument or suggestion is made in the petition for rehearing that was not contained in the voluminous brief on the same subject that was duly considered. There have been in this case two jury trials, the verdict in each being for more than the company will have to pay under mandate of this court, and not only upon its motion was

each verdict set aside or new trial granted, but the action was transferred to equity. It should, therefore, now be required to stand by finding of the special commissioner, made upon a third trial of the same facts, at least to the extent determined in the opinion of this court, and thereby terminate litigation begun more than ten years ago.

As expressly decided by this court, the contractors. were, November 30, 1883, entitled to the 15 per cent of earnings retained by the company, and judgment ought to have been rendered for amount thereof, about which there was no dispute, including interest that had been running six years, when the motion was made December 4, 1889. There was no controversy on the subject at that time, nor room for any; for the question of the company's right to maintain a counter-claim had been previously determined against it, and the motion to file the same pleading was not then made, nor ought it to have been sustained when it was made.

Section 757, Civil Code, as amended March 24, 1888, provides: "When a party recovers judgment for only part of the demand or property he sues for, the enforcement of such judgment shall not prevent him from prosecuting an appeal therefrom as to so much of the demand or property sued for that he did not recover." So that the contractors were entitled to an execution upon the judgment of the lower court for $61,536.55, at the same time prosecuting an appeal therefrom as to so much of the demand sued for that they did not recover. But the company prevented them obtaining an execution and thereby collecting amount of the judgment by a separate appeal and execution of a supersedeas bond, whereby it covenanted to pay to the contractors, appellees, all costs

and damages adjudged against appellants on that appeal and also satisfy the judgment appealed from, if affirmed. The decision of this court was that on the appeal of the contractors they did not recover all the demand sued for they were entitled to, and that the judgment *pro tanto* be reversed. But upon appeal of the company the judgment had to be necessarily affirmed, because it was not erroneous to its prejudice. And, as a consequence, under section 764, 10 per cent damages on amount of the judgment superseded has to be awarded.

Petition for rehearing overruled.