CASE 47.—ACTION BY THE KENTUCKY LIVE STOCK BREEDERS ASSN., &C.,
AGAINST H. W. MILLER AND OTHERS TO RECOVER A LOSS, WHICH
THE DEFENDANTS AGREED TO PAY, IN HOLDING A FAIR AT OWENS-
BORO.—JAN. 5.

# Kentucky Live Stock Breeders Association, &c. v. Miller, &c.

APPEAL FROM DAVIESS CIRCUIT COURT—T. F. BIRKHEAD, CIRCUIT JUDGE.

JUDGMENT FOR DEFENDANTS. PLAINTIFFS APPEAL. REVERSED.

SUBSCRIPTION—CONSTRUCTION—ACTION—PARTIES—JOINDER—STATUTE—
EQUITY JURISDICTION.

1. Where a subscription for the purpose of having a fair near
a particular city and of providing a fund to cover possible loss
was on condition that not less than a stipulated amount was sub-
scribed, and that the loss, if any, should be divided among the
subscribers to the fund *pro rata*, the liability of the subscribers
became absolute on the showing of a deficit of receipts, as related
to expenditures, and it was not necessary that the loss sustained
should have been first paid by the fair association.
2. Under the direct provisions of the Civil Code of Practice, section
26, persons severally liable on the same contract may be joined
in the same action at the plaintiff's option.
3. On a subscription to protect a fair association against loss, where
a subscriber's liability is limited to a *pro rata* proportion of the
total amount subscribed, the association risks the solvency of
each subscriber, and where any are insolvent the association
bears the loss.
4. Where the subscribers to a fund to induce the holding of a fair
in a particular city are numerous, many of whom deny liability
on various grounds, equity has jurisdiction to administer relief
in a suit to enforce the subscriptions.

J. A. DEAN AND W. O. HARRIS, ATTORNEYS FOR APPELLANTS.

## POINTS AND AUTHORITIES.

1. The balance due the Citizens National Bank was lost in
the fair, and is a loss which has been paid by the Breeders' As-

sociation. This we should recover whether the contract be one of indemnity or not.

2. The contract sued on is not an indemnity contract, but a contract to pay the losses incurred. Where there is such a contract the loss is recoverable as soon as incurred. Johnson v. Risk, 135 U. S., 303; *In re* Negus, 7 Wend., 499; Kohler v. Matlage, 72 N. Y., 266; Salmon v. Leyser, 116 Mo., 51; Walker v. Hoppock, 6 Wall., 94; Gage v. Lewis, 68 Ill., 606; Gunel v. Cue, 62 Ind., 34; Baylies on Sureties and Guarantys, 191; 16 Am. & Eng. Ency. of Law, 178.

3. A covenant to indemnify against a future liability is actionable as soon as the liability matures. Lewis v. Crockett, 3 Bibb, 197; Pond v. Warner, 2 Vt., 532.

4. A covenant to indemnify against liability is actionable as soon as the liability matures. Mills v. Dow, 133 U. S., 423; Showers v. Wadsworth, 81 Cal., 270; Jones v. Chiles, 8 Nev., 121; National Bank v. Beyler, 83 N. Y., 51.

5. Persons severally liable on the same contract may be sued jointly. Civil Code, sec. 26; Wilde v. Haycraft, 2 Duv., 309; Louisville v. Henderson, 5 Bush, 518.

6. The action was properly brought in equity. Civil Code, sec. 10, amendment 1890; Pomeroy's Equity, secs. 1420-1421; Breckinridge v. Brooks, 2 A. K. M., 335; Bruce v. Burdet, 1 J. J. M., 82; Powell v. Powell, 7 Dana, 12; O'Connor v. Bridge Co., 95 Ky., 642; Hely v. Hoertz, 26 K. L. R., 644.

C. S. WALKER, MILLER & TODD, J. D. ATCHESON and LA VEGA CLEMENTS, ATTORNEYS FOR APPELLEES.

## SYNOPSIS.

1. The contract is one of indemnity, and appellant can not maintain an action for a breach of the covenant against the indemnitors until payment, which alone can evidence any loss. 16 Am. & Eng. Ency. of Law (2d ed.), 168, 169, 176, 177; Central Trust Co. v. Louisville Trust Co., 100 Fed. Rep., 545, 546, 548, 549, 550, 551, 552; Campbell v. Rotering (Minn.), 6 L. R. A., 280.

2. The indemnitors may require the indemnitee to resist each debt included in the estimate of loss, or may do so themselves. Brandt's Ex'r. v. Donnelly, 94 Ky., 129, 132, 134; 16 Am. & Eng. Ency. of Law (2d ed.), 180; Reynolds v. Magness, 2 Ired. (24 N. Car.), 26.

Appellant avers appellees "are disputing the said accounts and the accuracy and validity of them." *Ante.* 4. This they have the right to do, and can not be sued on their covenant until the

correctness and validity of the claims are fixed by judgments in actions against the indemnitee, of which they must have notice.

3. The contract is several as to its obligation, and for the *pro rata* payable by each indemnitor the action must be distinct and separate. Darnall v. Lyon (Tex.), 19 S. W., 507, 22 *Id.*, 304; McFarland v. Lyon (Tex.), 35 *Id.*, 554, 555; Batsell v. St. Louis, A. & T. Ry. Co. (Tex.), 23 *Id.*, 552, 553; 27 Am. & Eng. Ency. of Law (2d ed.), 283, and cases cited; State v. Powers, 52 Miss., 198; Davis & Rankin Bldg. & Mfg. Co. v. Barber, 51 Fed. Rep., 148, 152.

Wilde & Co. v. Haycraft, &c., 2 Duv., 309, is not in conflict, where the question was as to jurisdiction.

4. A third person can not proceed directly against the indemnitors. 16 Am. & Eng. Ency. of Law (2d ed.), 176.

5. It is not material, in this record, that the judgment simply dismisses the petition. Dodds v. Combs, 3 Met., 29; Morrison v. Beckham, 96 Ky., 72.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

To induce the holding of the annual fair of the Kentucky Live Stock Breeders' Association at or near the city of Owensboro for the year 1903, certain persons of that community gave to appellant association a writing obligating the subscribers to make up any loss that might be sustained by the association. The paper, omitting signatures, is as follows:

"The Kentucky State Fair to be held by the Kentucky Live Stock Breeders' Association during the week beginning September —, 1903. For the purpose of having the above described fair in or near the city of Owensboro, and of providing a fund to cover possible loss in giving said fair, the undersigned hereby subscribe the sums set opposite their names on condition that not less than ———— are subscribed. The loss, if any, to be divided among the subscribers to the fund in proportion that each subscription bears to the total amount subscribed."

This suit was brought by the Kentucky Live Stock Breeders' Association, and by the Citizens' National Bank, which

had advanced money to the association upon assignment to it of the obligation first quoted, and against all the subscribers save two or three, one of whom was alleged to be dead and the other two insolvent.  The petition setting out the interest and benefit to the subscribers, defendants, by the holding of the State fair at Owensboro, charged that it was located and held at that point on the faith of the paper sued on, and that, as a result, the association had disbursed and expended in holding the fair the sum of $33,420.78, while its receipts had been but $21,594.49, leaving a deficit of $11,-826.29.  It was averred that some of the subscribers were corporations, and others trading firms, whose subscriptions were being denied or questioned because not within the scope of their charter privileges or partnership enterprises; that others were insolvent; that at least one was claiming that he had not in fact signed nor authorized the signing of the agreement.  Plaintiffs asked a reference to the commissioner, and the adjustment of the several liabilities of the subscribers, and for judgment against each in the pro rata sum so found against him.

A demurrer was sustained to the petition as amended, and the action was dismissed by the court.  In an opinion delivered by the learned chancellor who sat in the case it is disclosed that the court construed the writing sued upon to be a contract of indemnity against loss, several in nature, upon which no cause of action could be based until the obligee had actually sustained loss and had paid it.  The petition disclosing that some part of the loss claimed was represented by the debt it owed the bank for borrowed money, and other parts by unpaid bills or accounts against the association, the trial court was of the opinion, and so held, that there was in fact no loss, inasmuch as it had not been definitely ascertained and actually paid.  It was also thought

by the trial court that a joint action in equity could not be maintained upon the obligation. A very able and interesting discussion has been indulged by counsel concerning the nature of the obligation—whether it is a guaranty, a promise to pay, or an indemnity. It seems to be conceded that, if it be a guaranty or promise to pay in the first instance, it is not necessary to show that the obligee had actually paid the liabilities incurred. On the other hand, it may be assumed that upon a contract of indemnity against loss the liability of the indemnitor is not complete till the indemnitee has sustained the loss, which includes its payment. Without tracing the lines of distinction between the classes of obligation, we come at once to determine the meaning of the words used by the parties to this agreement. The word "loss" is used twice in the paper. A fund is to be provided by the subscribers "to cover possible loss in giving said fair," and "the loss, if any, to be divided among the subscribers to the fund in proportion that each subscription bears to the total amount subscribed." It is the presence of this word "loss" that alone suggests the idea of indemnity as determining the character of the paper. In seeking the meaning of the term, as intended by the parties, the etymology of the word will not be exclusively studied, but rather the situation and surroundings of the contracting persons. The obligors desired the appellant association to hold the State fair at the city of, Owensboro in order to draw to that city the large and unusual crowds which it was believed the event would attract. These crowds were expected to expend considerable sums of money in the city, by which the merchants, street railway, transfer companies, and other business concerns anticipated unusual profits and increase of income and business. All of the subscribers are alleged to have belonged to these classes—merchants and trading partnerships and corporations, and trans-

fer and street railway companies doing business in Owens-
boro, Ky. On the other hand, the breeders' association evi-
dently had misgivings as to the probability of its receipts
from holding the fair at that point paying its expenses. To
the extent that they did fail, there would be a deficit. This
deficit, in business parlance, represented "a loss." To induce
the breeders' association to hold its fair at Owensboro, the
subscribers agreed that they, to the extent of their subscrip-
tions, would take the chance of there being a deficit of in-
come over expenditures. So, they agreed "to provide a fund
to cover possible loss;" that is, to cover the loss that might
occur. Their subscriptions were not alone to pay back to
the association money it paid out in conducting the fair, over
and above its income from the fair, but to provide a fund
from which the "possible loss" was to be paid in the first in-
stance, if need be. It was not contemplated by the parties
that the breeders' association should have to suffer judg-
ments, and sequestration of its property, or liquidation of
its affairs, destruction of its credit, annihilation of its cor-
porate existence, or total bankruptcy as a condition precedent
to the liability of the subscribers on the obligation sued on.
Just the opposite must have been in mind as if the associa-
tion should fail to make expenses by locating and holding its
fair at Owensboro, it was intended that not it, but the sub-
scribers, to the extent indicated, should carry all the burden
of the failure. The "fund" to be provided under the agree-
ment was the aggregate of the subscriptions. It was not
necessary, nor was it contemplated, that the subscriptions
were to be paid in advance. On the contrary, the "loss"—
that is, the deficit of receipts apportioned to cost of con-
ducting the fair—was to be made up by pro rata assessments
on the subscriptions. The expression, "the loss, if any, to
be divided among the subscribers to the fund in proportion

that each subscription bears to the total amount subscribed," means nothing else.

There is a class of liabilities that do not entail loss unless and until they are paid. Contingent and inchoate liability for the debts or doings of another may be so classed. But where one in his own business had expended more than the business had produced, whether the expenditure represented capital invested, or borrowed means, or property and labor bought upon the credit of the concern, the deficit is in fact and in commercial understanding a loss. If appellant association had borrowed all the money it expended, it would be no more a loss than it is now. Or if it had been settled by an assessment upon its stockholders, it would be the same thing. The fact is, the very contingency contemplated by the parties as a "possible" result of the venture has occurred. It follows that the undertaking of the subscribers to bear the failure to the extent indicated has become absolute.

The next question is, what is the extent of each subscriber's liability? The paper in terms limits it to a pro rata proportion of the total amount subscribed. No one guaranties the solvency of another, or that any other subscription will be paid. The appellant association risked the solvency of each subscriber, and, where any are insolvent, the association will bear that loss. The question whether all whose names appear on the paper as subscribers are in fact bound thereon is not yet fully presented. Some who are apparently bound may be able to show that they were never bound, because, for example, they did not execute the paper. Others may be held never to have been bound, because their undertaking was contrary to the purposes of their charter, as in cases of certain corporations, and the act would be, therefore, *ultra vires.* On what may, on the face, appear an ineffectual attempt to bind a trading partnership or corporation, may be

shown by acts of estoppel to be binding. The street railway corporation, for example, may not have had authority generally to become a party to a scheme to raise a fund to indemnify some other corporation against loss in the conduct of the latter's business. Yet the street railway company could make a valid contract to increase its own business. If it induced the fair company to locate at a certain point where the railway company would get a monopoly, practically, of carrying to and from the fair grounds all the visitors attending the fair, and it got all the benefits obtainable under its contract, there is ample authority and undoubted principle for holding it liable on its undertaking; for it is not every *ultra vires* undertaking that is unenforceable. So, where a trading partnership signed the paper, it may or may not be invalid. For, although beyond the original scope of the partnership enterprise, still, if both or all the partners agreed to it, and ratified it, and the association has been induced to act upon it, as between the copartners and the association it ought to be binding, whether or not as a partnership liability, as a personal one against the individual members.

From what has been said, the trial court can fix the liability or determine the nonliability of the putative subscribers. Those who never became bound are not subscribers, and the pro rata liability of those who are bound will be measured without reference to those who escape because they were never bound. Under the Civil Code of Practice (section 26) persons severally liable upon the same contract may be included in the same action at the plaintiff's option. The nature of this case presents circumstances of great complication, and other difficulties in the way of adequate relief at law, sufficiently indicated by the facts above recited, that makes it more appropriate that it should be determined and

the relief apportioned and applied by a court of equity. Pomeroy's Equity, secs. 1420, 1421; O'Connor v. Henderson Bridge Co., 95 Ky., 642, 16 R., 244, 27 S. W., 251.

Judgment reversed, and cause remanded, with directions to overrule the demurrer to the petition as amended, and for further proceedings not inconsistent herewith.