The Chief Justice

delivered the Opinion of the Court. Power and Reeder went from Augusta, in Kentucky, down the rivers Ohio and Mississippi, on a boat of the former, freighted with property owned by each of them separately, and destined for sale on those rivers—Reeder agreeing to pay Power a stipulated price for the transportation of his property, and Power agreeing to pay Reeder forty-five dollars for his services as a hand on the boat.
Power sold and received the proceeds of a portion of Reeder’s goods, and paid him some money. But before the parties had made any settlement, Reeder sued Power, and obtained a judgment, by default, for three hundred and three dollars and thirty three cents, and procured a fieri facias, with an endorsement authorizing the *7 officer to take eighty five dollars and costs, in discharge of a replevin bond which had been given by Power in satisfaction of the judgment.
To enjoin the enforcement of that bond, and obtain a decree for an account and general relief, Power filed a bill in chancery—alleging among other things, that he had overpaid Reeder, and that on a full and accurate settlement, he would be justly entitled to a decree against Reeder for a balance exceeding one hundred dollars.
The bill exhibits and relies on the following account—

Complainant to Defendant.

Defendant to Complainant.

The bill alleges that the defendant had six horses on the boat; that he sold and received himself, the price of two of them; that complainant received the price of these four horses.
The answer without responding directly to this last allegation, exhibits the following as the true state of the account between the parties:—

*8
Complainant to Defendant.

Defendant to Complainant.

Thus it appears that, the difference in the two accounts is only as to the following particulars, viz. the defendant denies that he owes the complainant for a barrel of sugar and molasses, and charges him with more for the three horses sold by Gibbons, than the amount stated therefor in complainant’s account, and charges him, also with twenty dollars for alleged services in taking care of the boat, prior to the commencement of the voyage, and for $125 alleged to have been handed to him oil the river, and with $55 for a grey horse. These, therefore, constitute the only items of controversy.
It appears satisfactorily, that the defendant is entitled to nothing for alleged services prior to the commencement of the voyage, and there is no evidence in support of the charge of $125, alleged to have been advanced on the river.
Striking these two items from the defendant’s charges, the accounts as admitted in other respects, would exhibit a balance of a few dollars in the complainant’s favor. *9 Nevertheless, the Circuit Court dissolved his injunction, and dismissed his bill.
There had never been a settlement between the parties; and the complainant alleges that, when he advanced to the defendant, $355, after their return home, he apprehended that the defendant was not entitled to so much; but the defendant wanted the money, and he had full confidence in him, and in his acting fairly on a final settlement; and he alleges also, that the defendant’s judgment was obtained by default, when he (complainant) was out of the state. And these allegations are not denied by the answer.
In this state of case—had the complainant claimed no greater balance in his favor than the very small one which might appear, after rejecting the defendant’s charge of $20 for extra service, and of $125 for money advanced—we should not be inclined to allow him more than a perpetuation of his injunction; because such a trifling balance thus to be inferred, might be overruled by presumptions arising from the conduct of the parties. Even then, however, the dissolution of the injunction could not be approved.
But there are three other controverted items, which, if the complainant be right concerning them, would make the difference in the accounts too great in his favor, to justify a decree concluding his claim for a balance, by any circumstances appearing on the record.
These items are—1st, the charge for a barrel of sugar and molasses; 2nd, the difference in the two accounts as to the price of the three horses sold by Gibbons; and; 3rd, the defendant’s charge of $55, for a gray horse, in addition to the admitted charge of $85 for a gray mare.
As to the second of these items, it would rather appear that, the complainant should be charged with as much as $303 33, as charged by the defendant, and perhaps with $10 more. But, as to the first and third of these controverted items, the record, as now exhibited, will not enable the Court to decide safely or satisfactorily. It does not satisfactorily appear how, or by whom, the sugar and molasses were bought and paid for. And if they were not bought with the defendant’s money, or *10 with the four of his twenty two barrels of flour with which the complainant is not charged, there could be no reasonable doubt that the defendant should be charged with the price given, as he claimed on the boat, and took, a barrel of sugar and molasses.
Courts of equity have jurisdiction concurrently with courts of law, of matters of acc’t; and a party does not lose his right to be heard in eq. in such case, by being sued and submitting to a judgm’t. without defence, at law.
*10 Besides, there is not even any direct proof as to the cost of those articles. And, as to the charge of $55 for a gray horse, there is great uncertainty.
According to the pleadings, it might be inferred that the defendant had only six horses, and would rather seem that he sold and received pay for two of them; and, of course, that the complainant sold only one (a gray mare) as charged in his account as rendered. But one witness proves that the complainant sold a “ gray poney” of the defendants. This might be the gray mare accounted for by the complainant; but the fact that the defendant proved the sale of a gray poney, and that the complainant did not attempt to identify it with the gray mare, would per se rather imply that the poney was not the mare with the price of which the complainant had charged himself, and as to which, therefore, there was no controversy and no necessity of any proof. Still, nevertheless, as before suggested, defendant’s answer does not expressly deny the complainant’s allegation, that defendant had only six horses; that Gibbons sold three, the defendant two, and complainant one of them. In this vexed state of fact, to decide would be only to guess, and especially as the complainant has not in his bill, averred negatively that he had never sold or received pay for a gray poney of the defendant, other than the gray mare, and was never required by the defendant to answer on oath as to that or any other matter charged by the defendant in his answer, or in his account.
There being thus between the parties, mutual and multifarious accounts unsettled, a court of equity had jurisdiction, concurrently, with a court of law, to afford a remedy to either party; and therefore, as the complainant made no defence to the defendant's action of assumpsit, and as defendant could not deprive the complainant of his right to elect to be heard in a court of equity, *11 we have no doubt that the Circuit Court had jurisdiction in this case.
Whenever the true state of accounts in eq. does not appear with sufficient accuracy, they should be referred to an auditor, with permission to the parties to interrogate each other on oath, and take supplemental evidence on doubtful points.
The interrogatories should be in writing, filed with the auditor; who should call on the party to answer them, at a prescribed time and place; and if he fails to answer, accordingly, the auditor should report the fact to court.
He should report the state the accounts; the interrogatories and answers, the supplemental testimony, &c.
As a suit in equity, for settling mutual and complicated accounts, is substituted for the old common law action of account, in which the parties were required to account before an auditor, and could be compelled there to make mutual discoveries on oath—the like useful practice of reference and mutual interrogation, has prevailed in similar cases, in the British Chancery, and should always be observed by every Court of Equity, when otherwise there may be any serious doubt as to the true state of the accounts, or difficulty in satisfactorily adjusting them, and safely striking the just balance. 1 Story’s Equity, 432, Smith’s Chy, Pra. 111, 122, 127.
Such a reference, with authority to examine the parties on oath concerning the doubtful items in their accounts, was peculiarly proper in this case; for, as the facts now appear, justice cannot be done with any certainty, and without further enquiry, the chief end of bringing the contest into a court of equity might be frustrated. As, therefore, the decree seems, as the case now stands, to be erroneous, so far at least as it dissolved the injunction to the judgment at law, and must, consequently, be reversed, and as the record does not, in our opinion, enable this court to direct the Circuit Court, on the return of the case, to enter any prescribed final decree—we deem it proper to order a reference to an auditor, with instructions to examine each party on oath, on such interrogatories as the other shall choose to propound, as to—1st, the gray poney, or horse, charged at $55; 2nd, the sugar and molasses; 3d, the $125 alleged to have been advanced by the defendant to the complainant; and 4th, as to the price received by the complainant for the three horses sold by Gibbons; with instructions, also, to take any other supplemental evidence which either party may offer respecting those four matters, or any of them; and to make a detailed report of the accounts as audited, and of the interrogatories and answers, and supplemental evidence, if any. If either party shall wish to propound proper interrogatories to the other, and the latter shall not be present to answer them, the interrogatories may *12 be filed with the auditor, and it shall be his duty to notify the absentee, if a notice can be served on him, of the filing of them, and of their purport, and of a prescribed time and place when and where answers to them will be required. And if the party interrogated shall, whether present or absent, refuse or fail to answer, after being sufficiently notified of the interrogatories as filed, the auditor shall report that fact also.
This court finding the preparation of a chancery cause too defective for a safe decree, and that it might be improved by a reference to an auditor, remands the cause for that purpose.
Wherefore, the decree is reversed, and the cause remanded, with directions to refer to an auditor the special matters just enumerated and described; with authority to examine the parties on oath, in answer to such interrogatories as they shall propose, concerning the subjects of enquiry, and with special instructions as herein before suggested.