# P. Sheeran & Company v. Russell & Hutcherson.

(Decided November 1, 1911.)

## Appeal from Breckinridge Circuit Court.

1. Action—Common Law—Transfer to Equity.—In an action for damages for breach of contract to deliver staves, issues and evidence examined and held to involve accounts so complicated and such detail of facts as to render it impracticable for a jury to intelligently try the case, and that the case was properly transferred to equity under the provisions of subsection 4, section 10, Civil Code.

2. Sale—Subject to Buyer's Inspection—Improper Inspection—Mistake—Fraud—Seller's Remedy.—Where staves are sold subject to the buyer's inspection and classification, the seller may not refuse to comply with the contract of sale because of a mistake of judgment on the part of the buyer's inspector, but may recover damages equal to the difference between the value of the staves as graded, and their value if properly graded. If, however, the inspection and classification are fraudulently made, the seller may without incurring liability refuse to comply with his contract.

CLAUDE MERCER, N. McMERCER for appellants.

MURRAY & MURRAY, HENRY DeHAVEN MOORMAN for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiffs, Frank B. Russell and J. W. Hutcherson, timber merchants of Louisville, Kentucky, doing business under the firm name of Russell & Hutcherson, brought this action against the defendants, Peter Sheeran and Lon Jarboe, doing business under the firm name of P. Sheeran & Company, at Kirk, Breckinridge County, Kentucky, to recover damages for the failure of the defendants to comply with a contract for the sale and delivery of 300,000 staves. By the contract, which was in writing, and was executed during the month of March, 1906, the defendants agreed to deliver the staves to plaintiffs at their mill yard at Kirk, Kentucky, between that date and January 1st, 1907. Fifty per cent. of the staves were to be No. 1 grade, while the remainder were required to be halves, quarters and eighths. The contract price was $60 per thousand for No. 1, $35 per thousand for halves, $25 per thousand for quarters, and $16 per thousands for eighths. The staves were sold subject to plaintiffs' inspection, and were to be paid for according

to the classification made by them. When the contract was entered into, defendants had on hand 77,711 staves which were to be received and paid for, less 15 per cent. discount for culls. Sometime after the contract was made defendants refused to furnish any more staves. The price of staves had materially advanced.

Charging that defendants had delivered to them only 147,775 of the 300,000 staves contracted for, and had failed to comply with their contract to deliver the balance of the staves, plaintiffs alleged that they were damaged to the extent of the difference between the contract price and the market price at the time defendants refused to comply with their contract. In their answer and counterclaim, defendants pleaded that the contract sued upon did not contain all of the provisions of the agreement entered into between the parties and alleged that plaintiffs had contracted to convey to them a half interest in a certain well mentioned in the pleadings, and had also agreed not to buy any timber in Breckinridge County during the life of the contract sued on. These provisions of the agreement, it is charged, were omitted from the written contract by fraud or mistake. By the failure of plaintiffs to comply with these provisions it is claimed the defendants were released from any further obligations under the contract. The defendants also pleaded that the inspection by plaintiffs was wrongful and fraudulent in that many thousands of staves were improperly graded and classified, and that such conduct on the part of plaintiffs was such a violation of the contract as to excuse defendants from further compliance. Defendants also denied that they had furnished only 147,775 staves, as claimed by plaintiffs, and alleged that they had furnished approximately, 193,000 staves in fulfillment of the contract sued on. They asked, by way of counterclaim, judgment for the number of staves received by plaintiffs which had not been paid for, and for the difference between the amount received by them under the plaintiffs' classification and the amount they ought to have received had the staves been properly graded and classified.

Plaintiffs moved to transfer the case to equity. This motion was overruled. Two trials were had. In the first trial the jury was discharged because it was found that one of them was related to one of the defendants. The second trial resulted in a hung jury. Thereupon the plaintiffs renewed their motion to transfer the case to equity. The motion was sustained. The trial judge held

that the evidence failed to show that the defendants had furnished any staves which had been received by plaintiff and not paid for. He also concluded that no part of the agreement between the parties was omitted from the written contract through fraud or mistake. So far as the inspection was concerned he was of the opinion that there were about 15,000 No. 1 staves that were improperly classified as eighths. For this item he allowed defendants the difference in price of the two classes of staves, making the amount on 15,000 staves $660. Being of the opinion that defendants had failed to deliver, approximately, 55,000 No. 1 staves and 85,000 of a lower grade, he made an average and fixed plaintiffs' damages at $2,-588.60. He then directed judgment to go in favor of the plaintiffs for the difference between that sum and the $660 allowed defendants on their counterclaim, or the sum of $1,928.60. From this judgment the defendants have appealed.

It is insisted for the defendants that the trial court erred in transferring the case to the equity docket, and that the judgment of the court is erroneous.

Subsection 4 of section 10 of the Civil Code of Practice, provides:

"The court may, in its discretion, on motion of either party, or without motion, order the transfer of an action from the ordinary to the equity docket, or from a court of purely common law to a court of purely equity jurisdiction, whenever the court before which the action is pending shall be of the opinion that such transfer is necessary because of the peculiar questions involved, or because the case involves accounts so complicated or such detail of facts as to render it impracticable for a jury to intelligently try the case."

There is before us a record of about 700 typewritten pages, the principal part of which relates to the number of staves furnished and to the number of staves improperly classified. When the staves were graded a tally sheet was furnished by the inspector to the defendants, and one copy thereof was sent to the plaintiffs at their home office in Louisville. There the number of staves with their classification was placed upon plaintiffs' books. To determine the number of staves furnished and their proper classification necessarily involved an examination of the tally sheets and a comparison of them with plaintiffs' books. To ascertain the number of staves improperly graded great detail of fact was introduced in evi-

dence. Under the section of the Code above quoted the court is authorized to transfer to equity when he is of opinion that such transfer is necessary, because the case involves accounts so complicated or such details of facts as renders it impracticable for a jury to intelligently try the case. A careful examination of the record before us convinces us that the trial court committed no error in making the transfer. O'Connor v. Henderson Bridge Co., 95 Ky., 633; City of Covington v. Limerick, 19 Ky. Law Rep., 330.

We shall next consider the correctness of the chancellor's finding. Without going over the evidence in detail we conclude that he properly adjudged that it was not sufficient to show that any part of the agreement between the parties had been omitted by fraud or mistake. As to the number of staves actually furnished, we see no reason to disturb his finding. Defendants kept no books nor other records from which they could testify with any degree of accuracy. On the other hand, the plaintiffs' books show the number of staves received. Their estimate is also confirmed by the number of car loads of staves shipped from the station. There is no substantial difference between the amount which plaintiffs claim to have received and the number of cars of staves actually shipped.

As to the grading, no question arises as to the 77,711 staves on hand at the time the contract was made. Of these staves 43,481 were graded No. 1; in other words, 43 No. 1 staves were found out of every 77 inspected and counted. Of the remaining 81,719 staves known as new stock, plaintiffs' inspector classified only 29,862 as No. 1; this was at the rate of 29 No. 1's out of every 81 staves inspected. There is also evidence to the effect that a certain car load of staves over which plaintiffs and defendants had a dispute and which was sold by defendants to C. J. Hubbard, showed that fifty per cent. of the staves as graded by Hubbard's inspector were No. 1's. Taking the stock on hand at the time the contract was made and the car load sold to Hubbard as a basis for his classification, together with the fact that experienced timber men say that timber of substantially the same kind may be counted on to make about the same yield of staves as to grade, the court concluded that plaintiffs' inspector was too severe in his inspection, and that about 15,000 staves which were graded as eighths should have been

graded as No. 1. The court, however, was of opinion that there was nothing to show any fraud on the part of the inspector. Of course, the seller of staves subject to the buyer's inspection will not be permitted to refuse to deliver merely because the buyer's inspector makes a mistake of judgment. In such a case the only relief to which a seller is entitled to be compensated by the buyer for the difference between the value of the staves as actually graded and their value if properly graded. If, however, the inspector's conduct is such, or the difference between a proper classification of the staves and the classification actually made is so great, as to import fraud, then the seller will be justified in refusing to further comply with the contract. Wiburg & Hannah Co. v. U. P. Walling Co., 113 S. W., 832. According to the chancellor's conclusion on the facts, the evidence showed quite a proportion of staves improperly classified. In our opinion, the only way that justice may be done in this case is to submit to a jury the question, whether or not the inspection was fraudulently made. If not fraudulently made, judgment will go according to the chancellor's previous finding. If fraudulently made, plaintiffs will be denied the relief prayed for, and judgment will go in favor of defendants for the amount of their counterclaim as fixed by the chancellor.

The judgment is reversed and cause remanded for further proceedings consistent with this opinion.