## Rieger, et al. v. Schulte & Eicher, et al.

(Decided December 10, 1912.)

### Appeal from Kenton Circuit Court (Common Law & Equity Division).

1. **Mechanics' Lien—Subcontractors and Materialmen—Amount and Extent of Lien.**—Subcontractors and materialmen, who have proceeded as the statute directs, have liens for work done and material furnished in the erection of a building, in accordance with the plans and specifications therefor, for the amount of their respective claims, with no limitation except that the total shall not exceed the contract price, as agreed between the owner and principal contractor.

2. **Mechanics' Liens—Enforcement—Defenses—Set Off and Counterclaim.**—Payment of the contract price, in whole or in part, by the owner to the principal contractor is no defense to lien claims of subcontractors and materialmen. Damages, due to variation from the requirements of the specifications as to labor and material, may be ascertained and set off against the demands of those lien claimants, whose labor or material so varies.

3. **Mechanics' Liens—Evidence—Weight and Sufficiency.**—Evidence examined and held sufficient to support finding and judgment in favor of the lien claimants.

4. **Jury—Right to Trial By—Equity—Particular Proceedings.**—Proceedings to enforce mechanics' liens, being purely equitable, the refusal to transfer case to ordinary docket for trial of issues of fact, presented in defense to the demands of the lien claimants, was not a violation of the constitutional guaranty of the right of trial by jury. The right, thereby secured, refers only to such right as existed at common law.

5. **Appeal—Review—Harmless Error.**—A case will not be reversed for error, not affecting the substantial rights of the complaining litigant.

F. J. HANLON for appellants.

FREDERICK W. SCHMITZ, M. M. DURRETT, FRED B. BASSMAN and GEORGE VEITH for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Elizabeth and Amelia Rieger entered into a contract with Adam Lahner, by which he undertook to erect a building for them, in Latonia, Ky., according to certain plans and specifications, for $4,730. He sublet a large part of the work, and bought the material, used in the building, from various firms and individuals. Lyman Walker, an architect, prepared the plans and specifications and superintended the building. The owners advanced to the contractor money from time to time, as the work progressed until the building was completed, at which time they had paid to him $3,031.38. It appears that certain of the subcontractors and materialmen were not paid. They filed mechanics' and materialmen's liens against the property, and later instituted suits, in which they sought to have the property sold and the proceeds applied to the discharge of the debts due them. Shortly thereafter, while these suits were pending, the Rieger sisters filed suit against the contractor, in which they sought to recover damages alleged to have been sustained by them by reason of his failure to erect the building according to the plans and specifications under which he contracted to do the work. They set up the particulars in which the building failed to conform to the requirements of the plans and specifications, and sought to set off this claim of unliquidated damages for $1,643.50 against the liens which the subcontractors and materialmen were asserting against their property, and asked that the suit filed by them be consolidated with those filed by the subcontractors and materialmen, and the issues of fact be transferred to the common law docket for trial by a jury. These motions were overruled. The answer of appellants to the claims asserted by the subcontractors and materialmen was, in all material respects, the same as the claim set up in their petition for damages against the contractor. Proof of claims was heard before the master, and, in due time, he reported his findings. In this report he sustained the claim of each of the subcontractors and materialmen. On exceptions to this report, the Rieger sisters again asked that the question of fact raised in the pleadings be submitted to a jury for its determination. This motion was overruled. Upon consideration of the case, on exceptions to the master's report, the court, with some slight changes, found that the report was correct, and subject to these minor errors, which were eliminated, the report was

confirmed, and judgment entered, giving to each of the claimants a lien upon the property for the amounts so adjudged to him and directed it sold in satisfaction thereof. The owners appeal, and seek a reversal upon two grounds. It is insisted for them, first, that they were entitled to a trial by jury of the issue made between them and the subcontractors and materialmen, and that the failure of the court to grant them a jury trial was a violation of that right guaranteed to them by section 7 of the Constitution and expressly authorized by section 12 of the Code of Practice; and second, that the finding of the chancellor on the disputed question of fact is not supported by the evidence, and his judgment should be reversed for this reason.

The record shows that there were nine subcontractors and materialmen who asserted claims for liens, amounting in the aggregate to about $2,070. The owners claim that the contract price of $4,730 should be abated by the sum of $1,643. This amount was based upon the following items:

Damage suffered because the foundation was built some 12 to 16 inches higher than it should have been ...................... $1,000.00
Cost of four additional steps, necessitated by the higher foundation .............. 10.00
Two copings or gratings left out .......... 20.00
Extra dirt left out ...................... 14.70
Cementing cellar, erroneously left out of contract . ........................... 98.30
Defective mill work, stair work, flooring, glass, plumbing, roofing and electric work damaged . ........................... 500.00

It will thus be seen that, if appellants' contention be sustained in toto, the contractor, if he has been paid nothing, would be entitled to a lien upon the building for $3,087, this being the contract price less the amount which appellants claim is due them because of the damage in the construction of the building. The subcontractors and materialmen have a lien upon the building to the extent of the amount for which the contractor was entitled to a lien. Counsel for appellants seems to recognize this principle as correct, but insists that, inasmuch as the contractor was, during the progress of the work, paid something more than $3,000, his lien or

right to a lien has been canceled; and hence, the subcontractors and materialmen are not entitled to liens, although they had not been paid. This is not the law. The subcontractors and materialmen are entitled to a lien for the work done and material furnished in the erection of a building, although the owner thereof has been paid the full contract price. The only limitation upon the right of the subcontractor and materialman is that the sum total of their claims may not exceed the contract price. If the owner settles with the contractor, and leaves the claim of the subcontractor or materialman unsatisfied, under the plain provision of the statute, he is bound to pay them although the effect of this may be to require him to pay twice for the building. It is no defense to the claim of the subcontractor or materialman, who has complied with the requirements of the statutes and whose work and material are of the standard as to quality and kind called for in the contract, that the owner had paid the contractor. Hence, there are really but two questions raised by the pleadings in this case. First, were the defects in the building, set up and relied upon by appellants, such as were properly chargeable to any of the subcontractors and materialmen who were asserting these liens; and second, if so, to what extent should their liens be abated? These are the questions which counsel for appellants insists should have been submitted to the jury.

The lien of a subcontractor or a materialman is a creature of the statute. In the absence of a statute, they have no lien, unless there existed some contractual relation between them and the owner of the building. An examination of the statute creating the lien discloses the fact that provision is made, not only for establishing and perfecting the lien, but also for the method to be pursued in enforcing it. It is an equitable proceeding, and it is apparent that the Legislature did not intend that the method of procedure, in cases arising under this act, should be the same as those prevailing in ordinary equitable actions. If so, there was no necessity for providing, in detail in the act, for the preparation of the case for trial; but it would have been sufficient to say, after providing for the creation of the lien, that, in the enforcement thereof, the procedure should be the same as in other equitable actions. The very fact that the Legislature provided for a different course is the best evidence that it was not contemplated

that the mode of procedure governing ordinary equitable actions should control. If appellants were entitled to have the questions of fact, raised by the pleadings, determined by a jury, they were likewise entitled to have the witnesses, by whom the claims were either established or refuted, appear in person before the jury, a course which it is apparent, the Legislature did not contemplate should be pursued, else the act would not have provided that the proof shall be taken before the commissioner. Section 2471, after providing that the action shall be in equity and conducted as other proceedings in equity in similar cases, has the following proviso: "Except as otherwise provided herein." Now, this exception clearly has reference to the mode of procedure, for, further along in the act, we find that it provides: "After the expiration of ten days from the filing of the petition, the clerk shall draw up an order referring the case to the master commissioner of the court and file the same with the petition, and deliver to the commissioner the pleadings and papers of the suit and make a memorandum thereof in his minute book." This authority on the part of the clerk to refer the case, after the expiration of ten days, to the master commissioner is not in accordance with the practice in ordinary equitable actions. Section 2472 provides that the commissioner, upon receiving his commission, shall at once ascertain the names of the persons who have filed liens with the clerk of the county court against the property sought to be subjected and shall fix a time and place for hearing proof, showing claims against the property. All persons holding liens against the property, of whatever kind or character, are thereupon required by the commissioner to present same, with the evidence supporting them. The act provides that the owner of the property, or any other person whose interest may be affected by the suit, may contest any claim presented. That is, the master commissioner is expressly authorized to hear proof in support of or against the validity of any claim presented. Section 2473 clothes the commissioner with ample power to bring before him witnesses whose testimony may be desired. The act further provides that, after having heard proof on all claims, it shall be the duty of the commissioner to audit the accounts and make a report, showing the amount due each claimant, the nature and character of the respective claims, and the evidence

upon which each claim was allowed. The evident aim of the Legislature, in the enactment of this statute, was to provide a speedy method of determining the validity of claims asserted as liens against the property; and it is apparent that, in directing the evidence to be taken before the commissioner, the questions of facts arising out of disputes over the claims thus presented were not intended to be tried by a jury.

Appellants' counsel being of opinion that he was entitled to a jury trial, did not at first appear before the master at his sittings and introduced no evidence contesting the validity of the claims presented, nor was any exception filed to the report of the commissioner. The chancellor, upon perceiving the error into which counsel for appellants had fallen and with the evident purpose of doing full justice between the parties, set aside the confirmation of the report on claims and again referred the case to the master, giving each side a limited time in which to present their evidence. This order was entered over the objection of the claimants. In obedience to this order, the commissioner heard such evidence as was offered and again reported his finding. There is no complaint that any evidence, which appellants had bearing upon the question, was not presented to the commissioner, or that they were not given ample opportunity to present their defense to these claims when the evidence was being taken by the commissioner. Their sole complaint is that they were entitled to have the value of this evidence weighed and determined by a jury, rather than by the chancellor. There is no merit in this contention. The Constitution does not guarantee to a litigant the right to a trial by jury of issues of fact arising in every equity case, but in those cases to which, at common law, he was entitled to a jury trial. This being an equitable action and properly commenced as such, the right of appellants to have the issues of fact, raised in the pleadings, transferred to the common law docket for trial, is controlled by section 12 of the Code of Practice, which provides:

"In an equitable action, properly commenced as such, either party may, by motion, have the case transferred to the ordinary docket for the trial of any issue concerning which he is entitled to a jury trial." * * *

This raises the question, are the issues which appellants sought to have tried by a jury such as, under the facts of this case, they were entitled to have submitted

to a jury? In Carder v. Weisenburgh, 95 Ky., 135, the distinction between that class of cases in which, under the constitutional guaranty, a litigant is entitled to have a jury trial, and that class in which he is not, is clearly drawn. It is there said:

"If the equitable right depends upon the decision of legal issues, concerning which the party is entitled to a jury trial, the case, on motion, should be transferred as a matter of right to the common law docket to be tried by jury. The court has no right to refuse such transfer, unless the case be purely equitable, in which case it has discretionary power as to the transfer, and may, at its discretion, obtain the advisory aid of a jury in coming to a correct conclusion upon any question of fact involved in the issues to be tried. The Constitution of this State guarantees the right of jury trial. This means a trial according to the course of the common law, and secures the right only in cases where a jury trial was customarily used at common law; but in cases of purely equitable cognizance a trial by jury is not a matter of right, but it is addressed to the discretion of the chancellor."

In the later case of Comingor v. Louisville Trust Co., 128 Ky., 697, this court disposed of a similar question in the following language:

"The Constitution secures to a litigant the right of trial by jury only in cases where such right existed at common law."

This case being purely equitable and the proceeding being unknown to the common law, the chancellor did not err in declining to entertain the motion to transfer the action to the common law docket for a trial of the issues of fact by a jury. But, if we were less certain of our position upon this point, we would not direct a reversal of the case if, upon examination, we find the findings and judgment of the chancellor to be correct; for, under section 756 of the Code of Practice, no judgment should be reversed for error, occurring during the progress of the trial, that did not affect the substantial rights of the complaining litigant.

This brings us to the second ground relied upon for reversal, to-wit: That the judgment of the chancellor is not supported by the evidence. Appellants, in the preparation of the case for trial and in the introduction of evidence, based their defense upon the idea that these claimants were not entitled to recover, because the con-

tractor himself could not do so. It is not seriously contended that the particular defects in the building, set up and relied upon as supporting the claim for damages, are properly chargeable to the accounts of these particular claimants, and indeed, the evidence shows that they are not. Appellants may have a just ground of complaint as to the contractor, and others who furnished material or labor, but with those questions these litigants have no concern. The sole question for determination in this case is: Was the material furnished by these claimants of the quality called for in the contract, and did the work, performed on the buildings by the subcontractors, conform to the requirements of the specifications? If so, they were entitled to a judgment for the respective amounts claimed by them, without regard to the character of work done by the contractor himself or other subcontractors or materialmen. As stated, the only limitation upon their right is that the sum total of all the liens shall not exceed the contract price.

We have examined the record with care and find that, by a decided preponderance, the evidence supports the finding of the chancellor in every particular as to the claim of each of the appellees. This judgment is, therefore, affirmed.