## Garvey v. Garvey.

(Decided December 19, 1913).

### Appeal from Owen Circuit Court.

1. Equity—Jurisdiction of Court of Equity—Accounts.—A court of
   equity has concurrent jurisdiction in matters of account, and it
   should be exercised when otherwise there may be serious doubt
   as to the true state of the accounts, or difficulty in satisfactor-
   ily adjusting them and safely striking a balance.
2. Account, Action on—Transfer to Equity Docket.—Where a plain-
   tiff sued a defendant upon an account for work and labor, con-
   sisting of 268 separate items of charges, and the defendant
   counterclaimed upon an account containing 134 items of counter-
   charges, the case was properly transferred to the equity docket
   under subsection 4 of section 10 of the Civil Code of Practice,
   which provides for the transfer of an ordinary action to the
   equity docket whenever the court shall be of opinion that such
   transfer is necessary because the case involves questions so
   complicated, and of such great detail of facts, as to render it im-
   practicable for a jury to intelligently try the case.
3. Appeal—Party Complaining of Ruling of Circuit Court Should
   Point Out Errors.—When a party to an appeal is dissatisfied with
   the ruling of the circuit court upon an issue of fact, he should

point out specifically the errors he complains of, and the testimony tending to sustain his contention.

4. Appeal—Failure of Appellant's Counsel to Point Out Errors.— When counsel for appellant does not point out in his brief any errors in the judgment appealed from, or assign any reason why it should be reversed, this court, having neither the time nor the inclination to hunt for errors that might justify a reversal, will assume that the judgment appealed from is correct, and affirm it.

JOHN W. DOUGLAS and H. K. BOURNE for appellant.

BOTTS & PERRY for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

For several years prior to 1896 the appellant Robert Garvey, had lived as a tenant upon a farm of 251 acres, in Owen county, which belonged to his father, John J. Garvey. In August, 1896, John J. Garvey sold the farm to his brother, B. E. Garvey, the appellee.

Robert Garvey remained upon the farm and cultivated it as the tenant of his uncle, under a contract by which B. E. Garvey was to receive two-thirds of the tobacco and one-half of the corn raised upon the farm, and one-third of the profits on live stock. B. E. Garvey was to furnish the money with which to buy the live stock, while Robert Garvey was to furnish one-half of the feed for the stock. This arrangement continued until the fall of 1912, when Robert Garvey, asserting a hostile title, and claiming to own a life interest in the farm, his uncle, B. E. Garvey, took forcible detainer proceedings against him, which were finally settled by appellant agreeing to give possession of the farm on March 1st, 1913, which he did.

On October 15, 1912, Robert Garvey brought this ordinary action against his uncle, B. E. Garvey, claiming that during the sixteen years he lived upon the farm he had, at the special instance and request of B. E. Garvey, performed work and labor for him for which he agreed and promised to pay the plaintiff whatever said work and labor were reasonably worth, and that said work and labor were reasonably worth the net sum of $1,846.79. Defendant answered by traversing the petition, and affirmatively pleading payment and limitation.

Upon a motion to make the petition more specific and definite, plaintiff filed an amplified petition, setting up

in great detail the specific items, ranging from 50 cents to $125, which he sought to recover.

On the 4th of October, 1912, upon the motion of defendant, the action was transferred to the equity docket, and on the 11th day of October the defendant filed his answer, set-off and counter-claim.

On October 13, 1912, after the issues had been made, the plaintiff moved the court to submit the following questions to a jury:

1.   Did the defendant, B. E. Garvey, agree and promise to pay the plaintiff for work done, material furnished for buildings, for board of hands, as shown by account?

2.   Did he promise and agree to pay this amount within five years before the ——— day of October, 1912, date of filing of this action?

3.   Has defendant paid any part of same, and if so, what amount has he paid?

The chancellor overruled the motion and proceeded to try the case, at the proper time, hearing the testimony orally; and having adjudged that the plaintiff take nothing by his petition, he appeals.

The first error assigned is that the court erred in transferring the action to equity, and that it again erred in refusing to submit to the jury the questions above set out.

These two objections really present but one question, since the court properly refused to try the suggested questions of fact by a jury, if the case was properly transferred to equity. The reason for transferring the case to equity was the inability of a jury to intelligently try the large number of issues of fact presented; and if the reason was sufficient to warrant the order of transfer, it was equally sufficient to justify the second order complained of, which practically covered the whole case.

So, the real question was this: Did the appellant have the right to have his case tried by a jury?

The plaintiff's account contained 268 separate items of charges, and 31 exhibits, while the defendant's counter-claim contained 134 items of counter-charges, making more than 400 separate items of charges and counter-charges, ranging from 50 cents to $125.

Subsection 4 of section 10 of the Civil Code of Practice provides as follows:

"The court may, in its discretion, on motion of either party, or without motion, order the transfer of

an action from the ordinary to the equity docket, or from a court of purely common law to a court of purely equity jurisdiction, whenever the court before which the action is pending shall be of the opinion that such transfer is necessary because of the peculiar questions involved, or because the case involves accounts so complicated or such great detail of facts as to render it impracticable for a jury to intelligently try the case.''

In O'Connor & McCulloch v. Henderson Bridge Co., 95 Ky., 642, the appellants had, in an action at law, recovered damages measured upon a large amount of work done by them for appellee in constructing a bridge over the Ohio river; and in reversing the judgment for a trial in equity, the court construed the above section of the code, saying:

''This court has uniformly held that a court of equity has concurrent jurisdiction in matters of account and 'should be exercised when otherwise there may be serious doubt as to the true state of the accounts, or difficulty in satisfactorily adjusting them, and safely striking a balance.' (Breckinridge v. Brooks, 2 A. K. M., 335; Bruce v. Burdet, 1 J. J. M., 80; Power v. Reeder, 9 Dana, 6.)

''But in every case of interposition of a court of equity in such actions there must exist a necessity arising from failure of remedy at law to afford justice.''

In Prussian National Insurance Co. v. Terrell, 142 Ky., 738, the action of the circuit court in transferring to equity a case which involved only 20 issues of fact, was approved.

This equitable jurisdiction should be exercised wherever there is difficulty in adjusting the accounts, or where the issues involved are so numerous and complicated as to render a jury trial impracticable.

See, also, Harrodsburg Water Co. v. City of Harrodsburg, 28 Ky. L. R., 625, 89 S. W., 729; Manion v. Manion, 27 K. L. R., 400, 85 S. W., 197; Hely v. Hoertz, 26 Ky. L. R., 644, 82 S. W., 402; City of Covington v. Limerick, 19 Ky. L. R., 330, 40 S. W., 354; Turner v. Johnson, 18 Ky. L. R., 202, 35 S. W., 923.

It needs no argument to show that it would have been practically impossible for a jury to intelligently pass upon 400 issues of fact. We are of opinion the court did not err in transferring the case to the equity docket.

Plaintiff insists, however, that after the case had been transferred to equity, he had the right to have the

common law issues presented by the questions offered by him tried by a jury, although the case should remain on the equity docket for final disposition; and in support of that proposition he relies upon Carder v. Weisenburg, 95 Ky., 135; Moraweck v. Martineck, 128 Ky., 155; Quigley v. Bean, 137 Ky., 325, and other cases of a similar character.

These cases do not conflict with the rule above laid down, since the impracticability of trial by jury did not appear in those cases, and it is this impracticability that affords the equitable jurisdiction. The same reason that justified the transfer, equally justified the refusal, in this case, to try the suggested questions by a jury.

On the merits of the case we have not been helped, in any material respect, by either of the four briefs that have been filed, since neither of them has pointed out a single item concerning which it is claimed the circuit court erred. We are merely handed a record of over 250 pages of testimony, covering 433 issues of fact, and asked to go through the record and review the circuit court's action as to each item. This was peculiarly a case for a commissioner, but neither side asked a reference.

When a party to an appeal is dissatisfied with the ruling of the circuit court upon an issue of fact, he should point out specifically the errors he complains of, and the testimony tending to sustain his contention.

The facts of this case bring it squarely within the rule laid down in Brown v. Daniels, 154 Ky., 268, where the record presented the settlement of complicated accounts covering a period of more than four years, the only difference in the cases being that the questions in the case at bar extend over a period of sixteen years, and cover a much larger number of items. In that case, as here, the briefs pointed out no specific errors, but merely called upon the court to go over the entire settlement and adjust the differences of the parties. In declining to undertake that investigation, and in affirming the case, we there said:

"When counsel for appellants do not point out in a brief any errors in the judgment appealed from, or assign any reason why it should be reversed, this court, having neither the time nor the inclination to hunt for errors that might justify a reversal, will assume that the judgment appealed from is correct, and affirm it."

Upon every issue the testimony is conflicting—the appellant and his witnesses sustaining his claims, the appellee controverting them. The rule above indicated has especial application to this case.

Judgment affirmed.