# Commercial Union Assurance Company et al. v. Howard.

(Decided April 17, 1934.)

F. M. DRAKE and LOW & BRYANT for appellants.

N. R. PATTERSON and GOLDEN, GILBERT & GOLDEN, and BATSON, CARY & WELCH for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

E. M. Howard was the owner of the Pineville Hotel, situated in the city of Pineville, Ky. The Commercial Union Assurance Company, United States Fire Insurance Company, Yorkshire Insurance Company, Rhode Island Insurance Company, Sun Insurance Company, Pennsylvania Fire Insurance Company, and the Home Fire and Marine Insurance Company issued and delivered to him their respective policies insuring the property in the sum of $42,000, for the period of time stated in the policies, against loss by fire. The policies describe the property as a four-story brick building. Its description is: "A four story brick building with an annex of two stories and a small extension for the furnace." On the first floor of the annex were the kitchen, pantry, and

linen closets; on the second, were. bedrooms. In the four-story section were the dining room, offices, bedrooms, etc. The property was in good condition at the time of the fire. An electric elevator had been installed and was in use at the time. The building was equipped with baths, electric light fixtures, and a heating plant.

The property was partially destroyed by fire on April 5, 1932. Separate actions were brought by Howard against the insurance companies, but were consolidated and tried as one. The total damages claimed by Howard were $28,675.79. In their several answers the insurance companies denied the property was damaged $28,675.79 or any sum in excess of $5,000, and averred that "at the time of the fire it would not have cost exceeding $5,000.00 to repair the property with materials of like kind and quality."

Before the commencement of the trial, they entered a motion, supported by affidavit, to transfer the consolidated actions to the equity docket. The motion to transfer was overruled. The insurance companies saved an exception and are here complaining of this action of the court. It is admitted the actions were properly brought at law. The motion to transfer is based on subsection 4 of section 10, Civil Code of Practice, as it has been construed repeatedly by this court. It is not disputed the court had a discretion in the matter of transferring the case to the equity docket. Brown & Millard v. Crescent Stave Co., 207 Ky. 470, 269 S. W. 739. Also that equity has concurrent jurisdiction in matters of accounts where they are of such a complex nature as to render the remedy at law inadequate, and this jurisdiction should be exercised where there is a serious doubt as to the true state of accounts or where there is difficulty in adjusting them or where the questions involved are so numerous and complicated as to render a jury trial impractical. There is no constitutional guaranty of trial by a jury in such cases. O'Connor et al. v. Henderson Bridge Co., 95 Ky. 633, 27 S. W. 251, 253, 983, 16 Ky. Law Rep. 244; Wilson v. Carrollton Tobacco Warehouse Co., 182 Ky. 433, 206 S. W. 618. As was said in O'Connor et al. v. Henderson Bridge Co.:

"Accordingly, as said in Story's Equity (volume 1, sec. 442), 'courts of equity have for a long time exercised a general jurisdiction in all cases of mutual accounts, upon the ground of the inadequacy of the remedy at law.' And in section 451 is this lan-

guage: 'Lord Redesdale has justly said that in a complicated account a court of law would be incompetent to examine it at nisi prius, with all the necessary accuracy. This is the principle on which courts of equity constantly act, by taking cognizance of matters which, though recognizable at law, are yet so involved with complex accounts that it cannot be properly taken at law, and until the result of the account is known the justice of the case cannot appear.' This court has uniformly held that a court of equity has concurrent jurisdiction in matters of account, which 'should be exercised when otherwise there may be serious doubt as to the true state of the accounts, or difficulty in satisfactorily adjusting them, and safely striking a balance.' Breckinridge v. Brooks, 2 A. K. Marsh, 335 [12 Am. Dec. 401]; Bruce v. Burdet, 1 J. J. Marsh, 80; Power v. Reeder, 9 Dana, 6. But, in every case of interposition of a court of equity in such actions, there must exist a necessity arising from failure of remedy at law to afford justice; and the extent of equitable jurisdiction in actions for an accounting, and when to be exercised, is thus stated in Pomeroy's Equity Jurisprudence (section 1421): 'The instances in which the legal remedies are held to be inadequate, and therefore a suit in equity for an accounting proper, are (1) where there are mutual accounts between the plaintiff and the defendant,—that is, when each of the two parties has received and paid an account of the other; (2) when the accounts are all on one side, but there are circumstances of great complication or difficulties in the way of adequate relief at law; (3) when a fiduciary relation exists between the parties, and a duty rests on the defendant to render an account.' "

To the same effect, see Galion Iron Works & Mfg. Co. v. Bullitt County, 184 Ky. 805, 213 S. W. 200; Reiger v. Schulte & Eicher, 151 Ky. 129, 151 S. W. 395; Carder v. Weisenburgh, 95 Ky. 135, 23 S. W. 964, 15 Ky. Law Rep. 497; Prussian Nat. Ins. Co. v. Terrell, 142 Ky. 732, 135 S. W. 416; Sheeran & Co. v. Russell & Hutcherson, 145 Ky. 223, 140 S. W. 195; Phoenix Jellico Coal Co. v. Grant, 148 Ky. 113, 146 S. W. 24; Garvey v. Garvey, 156 Ky. 664, 161 S. W. 526; Turner-Elkhorn Coal Co. v. Smith, 247 Ky. 112, 56 S. W. (2d) 545; Leichhardt et al. v. Norheimer, 242 Ky. 67, 45 S. W. (2d.) 832.

Subsection 4 of section 10, Civil Code of Practice, and its construction as enunciated by the decisions of this court, are consonant with section 7 of our Constitution and section 11 of the Civil Code of Practice and the decision of this court construing them.

Section 7 of our Constitution, guaranteeing the ancient mode of trial by a jury and in declaring the right thereof shall remain inviolate, has reference to cases in which such right was given at common law, and the right thus secured cannot be abridged or taken away at the discretion of the trial court by converting a legal issue into an equitable one. Rieger v. Schulte & Eicher, supra; Carder v. Weisenburgh, supra; O'Connor v. Henderson Bridge Co., supra.

If in an action at law the plaintiff is entitled to a trial by a jury under section 11 of the Civil Code of Practice, it is an error to transfer it to equity. Creager v. Walker, 7 Bush, 1; Taul v. Sears, 11 Ky. Law Rep. 366.

In the pending case, the petitions state no cause of action, and the answers contain no defense, equitable in nature governed by the rules applicable to equitable actions. Weikel v. Alt, 234 Ky. 91, 27 S. W. (2d) 684.

The actions were properly commenced at law and the insurance companies' right to have same transferred to the equity docket was determinable exclusively on the pleadings, and the pleadings not presenting a valid equitable cause or defense they were not entitled to the transfer. Jones v. Letcher, 13 B. Mon. 363; Davis v. Ferguson, 92 S. W. 968, 29 Ky. Law Rep. 214; Louisville & N. R. Co. v. Cooper, 15 Ky. Law Rep. 702; Markwell v. Lewis, 15 Ky. Law Rep. 206. Under subsection 4 of section 10, Civil Code of Practice, the court may, in its discretion, on its own motion, in an action at law transfer it to the equity docket where the pleadings show it involves accounts complicated or of such great detail of facts or mathematical calculations as to render it impractical for the jury intelligently to try the case. Brashears v. Letcher County Court, 61 S. W. 285, 22 Ky. Law Rep. 763.

The affidavit filed in support of the motion to transfer to the equity docket cannot be permitted to take the place of pleadings under the Civil Code and its construction.

However, if the general rule should be departed from and the affidavit be regarded as sufficient to take the place of a pleading as contemplated by the Civil Code, it was exclusively within the discretion of the trial judge to transfer the action to the equity docket for trial; that is to say, a discretion to be exercised not arbitrarily or willfully, but with regard to what was right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result. Langnes v. Green, 282 U. S. 531, 51 S. Ct. 243, 247, 75 L. Ed. 520; The Steamship Styria v. Morgan, 186 U. S. 1, 9, 22 S. Ct. 731, 46 L. Ed. 1027.

The affidavit merely expresses the opinion of the affiant as to the issues to which the evidence would thereafter be directed. It recited no facts. It stated no accounts or figures or fact, tending to show it would be impractical for the jury intelligently to try the case. In the absence of a statement of the facts either in the pleadings or the affidavit, the court had before it nothing other than the opinion of the affiant upon which to exercise its discretion.

The insurance companies further argue that: "A great mass of 'opinion' evidence, offered by the plaintiff, was improperly admitted, principally because it was given by witnesses who admitted candidly and repeatedly that they were simply making guesses or 'estimates,' not based on facts, which they could not support; and no time was fixed for this testimony;" "evidence relevant to the defense was excluded by the court;" "the instructions given by the court submitted to the jury an erroneous measure of recovery;" "the verdict is not sustained by any evidence;" and "the principal item claimed by the plaintiff was damage to property not covered by the policies."

To dispose of these contentions it is necessary and required that we review the evidence, which we have earnestly and diligently done. The evidence is too voluminous to reproduce in this opinion.

It is argued the testimony of the witnesses of Howard is subject to the same objections as those sustained to the witnesses of the plaintiff in Springfield Fire & Marine Ins. Co. v. Ramsey, 245 Ky. 367, 53 S. W. (2d) 560. The objections in that case were directed to be sustained on the ground the witnesses stated their opin-

ions without stating the facts upon which their opinions rested. In the pending case the witnesses of Howard testified as to their personal knowledge of the condition of the building, their inspection of it, their experience in the construction of other buildings and in the purchasing of materials therefor; in the installing of heating plants and electric light equipments in other buildings. Each of them gave the years of experience they had had in their particular line, clearly showing their qualifications, entitling them, under the prevailing rules in such cases, to express their opinions as to the cost of constructing the destroyed or damaged portions of the building, the heating plant, the electric light equipment, the papering and painting necessary to restore the same to the condition they were in immediately before the fire. True it is that on cross-examination, many, if not all of them, were called on to itemize divers and various materials and labor and costs thereof, which they testified were necessary to restore the building, fixtures, or heating plant to the condition the same was in immediately before the fire, and their asnwers were often indefinite and uncertain, and frequently they failed to give an intelligent answer to the question in relation thereto. This fact affected the weight of the testimony of the witness, not his competency. The weight and credibility of the testimony of the witnesses were questions for the jury. Their competency was one for the court, and considering their respective testimony showing they had had experience in erecting other buildings, electric equipment, and heating plants, and the purchasing materials therefor, they were clearly competent, notwithstanding on cross-examination they were indefinite and uncertain as to the cost of the material necessary to repair and restore the building, the electric equipment, or heating plant under investigation. The objections to the testimony of the witnesses, as urged in the brief, are predicated on the ground of their incompetency and not to certain questions or answers.

The insurance companies endeavored to induce the court to admit evidence showing "four large, wood-jacketed, metal cans, which had contained oil—or some mixture of gasoline and oil—were found in the building when the fire department entered it." In support of their insistence this evidence should have been admitted. In their brief they state:

"We submit that the rejection of, the above testi-

mony was error, and that it should have been admitted—under an admonition of the court, if desired—for whatever light it threw upon the character of the fire and the probability of the damage which it caused, for the reason that a long, slow-burning natural fire would have been more destructive to the building than a flash fire which was quickly extinguished."

Sufficient it is to say no issue was involved calling for such evidence. The court properly refused to admit it.

As to the insistence there was no evidence to sustain the verdict, the insurance companies' answers admitted the property covered by their policies had been damaged by fire. The evidence as to the reasonable cost of repairing and restoring the property to its condition immediately before the fire was conflicting; that in behalf of Howard showed the cost ranged from $29,000 down; that in behalf of the insurance companies, $5,000 up. The height and dimensions of the annex, and the material of which it was constructed, were not disputed. The witnesses of Howard stated it was totally dstroyed. Those of the insurance companies asserted it was a partial loss. Certain rooms in the four-story portion of the building were damaged by the fire. The extent and nature of the damage were described by the witnesses of Howard and also those of the insurance companies. They disagreed as to the extent and nature of the damage as well as the cost of repairing and restoring the same. For Howard it was shown a certain portion of the rear wall of the four-story building was damaged by the fire and would have to be replaced. For the insurance companies it was shown the condition of the wall was not caused by the fire. On the conflicting evidence as to the reasonable cost of repairing and restoring the damaged portion of the four stories, the annex, the heating plant, the electric light equipment the issue was for the jury to determine. It fixed the reasonable, total cost of repairing and restoring the property to the condition in which the same was in immediately before the fire, at $15,000. We are not authorized to interrupt this verdict. The jury were the triers of the facts. The question determined by its verdict was one of value, and this court reposes confidence in the finding of a jury on controverted questions of value of property of the character of that now involved. A. Arnold & Son Transfer & Storage Co. v.

Weisiger, 224 Ky. 659, 6 S. W. (2d) 1084; City of Greenville v. Johnston, 244 Ky. 782, 52 S. W. (2d) 716. The general rule is, only where there is no evidence to support the verdict, or it is palpably against the weight of the evidence, are we authorized to disturb it, unless it is the product of bias, passion, or prejudice, neither of which appears in this case.

• The property is described in the policies as a "four story brick." It is argued that, therefore, the coverage did not include the "annex of two stories and small extension for the furnace." No such issue was raised by the pleadings. The four-story and the two-story annex with small extension for the furnace were one building and was recognized and used as the Pineville Hotel property. If, as here claimed by the insurance companies, the policies did not cover the two-story portion of the building and the extension for furnace, it was the duty of the insurance companies to raise this issue in the trial court by some sort of pleading, if not by timely objection to the evidence in relation to the two-story and extension for furnace, or in some manner indicate to the court the policies did not include that portion of the building. A motion for a peremptory instruction on the whole case in no way disclosed to the court it was offered on the theory the two-story portion of the building and furnace extension were not covered by the policies. The contention the policies did not cover the annex and the small extension for the furnace was not presented in any form or manner in the trial court. It is too late to raise the question for the first time in this court

Criticism of instruction No. 1: It "was fatally erroneous in that it entirely omitted one essential element of the liability of the defendants," i. e., "the loss or damage thereby ascertained or estimated according to such actual value with proper deduction for depreciation, however caused, and shall not in any event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality." In their criticism of it, the insurance companies declare:

"The instruction wholly omits the depreciation element and left the jury to award whatever sum they wished, to repair and replace the building, without any regard as to the condition it was in before the fire."

The criticized instruction in intendment and meaning,

though different in phraseology, has often been approved in other cases. See Spring Garden Ins. Co. v. Imperial Tobacco Co., 132 Ky. 7, 116 S. W. 234, 20 L. R. A. (N. S.) 277, 136 Am. St. Rep. 164; Citizens' Fire Ins. Co. v. Lockridge, etc., 132 Ky. 1, 116 S. W. 303, 20 L. R. A. (N. S.) 226; Springfield Fire & Marine Ins. Co. v. Ramey, 245 Ky. 367, 53 S. W. (2d) 560, 563. In Springfield Fire & Marine Ins. Co. v. Ramey, it is written:

> "The criterion of recovery for partial loss is such reasonable sum as represents the difference in value, if anything, between the building just before the fire occurred and the same building immediately thereafter that was approximately caused by the fire; such difference, if any, in value to be determined by the reasonable cost of restoring or repairing any damage or injury caused solely by the fire to as good condition as it was just before the fire."

Instruction No. 1 contains the above language. The property had depreciated before the fire, and the instruction directing the jury to find the cost of restoring it to its condition immediately before the fire necessarily required the consideration of its depreciated condition. Thus it fully meets the objection that it omits the right of the insurance companies to have the damage "ascertained or estimated according to such actual value with proper consideration for depreciation of whatever cause."

Perceiving no prejudicial error, the judgment is affirmed.