· Lewis R. MADDOX, Appellant,

v.

PEACOCK COAL COMPANY, Appellee.

· Court of Appeals of Kentucky.

May 13, 1955.

Rehearing Dismissed Sept. 26, 1955.

Fielden Woodward, Woodward, Hobson & Fulton, Louisville, for appellant.

Norman Curtis, Louisville, for appellee.

MILLIKEN, Judge.

The sole question presented on this appeal is whether the trial court properly directed a verdict for the defendant, Peacock Coal Company, at the close of the plaintiff-appellant's evidence.

Near midnight on Sunday, December 28, 1952, the plaintiff-appellant Maddox was driving his automobile along Berry Boulevard in Louisville in front of the retail coal yard of the defendant-appellee, Peacock Coal Company, when his car suddenly skidded on ice and went out of control and he was seriously injured. The evidence showed that water had run from Peacock's premises onto Berry Boulevard where it had frozen and created a slippery condition which caused the police to attempt to guard the area after the accident by placing a police car, with red lights blinking, in front of the ice. In spite of this precaution, a

number of other cars skidded on the iced area in the street. It had not rained or snowed recently and there was no ice on the streets in the vicinity except in front of Peacock's premises.

Witness Murphy, an employee of the Louisville Water Company, who was sent to investigate a reported pipe "leak," beamed his flashlight through the gate which closed off Peacock's premises. He said he saw water bubbling out of the ground behind a small icehouse on the premises which ran under the icehouse and into the street. He thought the water was coming from a pipe that had frozen and burst, but neither he nor anyone else went onto the premises to investigate the actual source of the water.

Marie W. Boylan, owner of the Peacock property, testified that she had visited the premises at noon Sunday, the day of the accident, and again later that evening to keep a fire going, and that while there she saw no sign of water running from the premises into the street. She further testified when she arrived at work Monday morning there was no water running from her premises, no broken pipe, and that she had never had any plumbing work done on the pipe. It would have been to the appellee's advantage in this instance to prove that a pipe had frozen and burst during the night since proof of such an unexpected occurrence would have exonerated Peacock from liability. But the owner of Peacock said there was no broken pipe, so obviously from her viewpoint this water was coming from a source other than a break in a pipe which had occurred Sunday night.

The appellee, owner of the Peacock property, further testified that she had never observed water running from her premises into the street. However, Police Officer Marrs of the Jefferson County Police Department, whose duty it was to patrol this area in a police cruiser, testified that he had seen water draining off the Peacock property several times within the past thirty days. He testified that the water on the night of the accident was coming from under a little raised icehouse on the Peacock premises, from what source he could not say, but the water was coming right out under the icehouse the same way he had seen it running on previous occasions.

Acting on the above facts, the trial court gave a directed verdict for Peacock. In this appeal from the judgment and the order of the trial court denying him a new trial, appellant Maddox contends: (1) the court erred in sustaining defendant's objection to competent evidence offered by the plaintiff to the effect that the same type of condition had existed with respect to the accumulation of water prior to the date of this accident; (2) the court erred in overruling plaintiff's objection to the defendant's motion for a directed verdict at the conclusion of plaintiff's testimony, and erred in directing the jury to find a verdict for the defendant.

The first contention relates to the exclusion by the court of the testimony of William Huff who testified in chambers, out of the presence of the jury, that he drove by the Peacock premises every day and that he had seen water standing in front of the icehouse there many times and that he had seen water on the street in front of the premises many times. He didn't see the water actually coming from the Peacock premises, but inferred it had come from there because of the slight down grade of the highway at that point and there was no water collected on the road above or below the defendant's premises. The court excluded this testimony because it did not think Mr. Huff was qualified "from an engineering standpoint." The trial court did not think it proper to allow Mr. Huff to testify that the Peacock premises must have been the source of the water he had seen on prior occasions, since he did not see it running from the premises, but merely deduced that it must have been coming from there because of the topography of the area.

[1-3] Whether the qualification of a witness to state his opinion is sufficiently established is a matter resting largely in

the discretion of the trial court, and its ruling thereon ordinarily will not be disturbed unless there is a clear showing of error. 32 C.J.S., Evidence § 458; 5 Am. Jur., Appeal & Error, Sec. 1604. It is the consensus of this court that the trial court erred in this instance in not allowing Mr. Huff to testify, since it was natural for Huff to deduce, in the circumstances, that water he had seen on Berry Boulevard on prior occasions came from the Peacock premises. Where an inference is so usual, natural, or instinctive as to accord with general experience, it is admissible as part of the common stock of knowledge. 32 C.J.S., Evidence § 460. The uncertainty of Mr. Huff as to the location of a drain pipe across the highway, or as to the drainage of the entire Berry Boulevard area, might, in the eyes of the jury, affect the weight of his testimony, but should not affect his competency. Commercial Union Assurance Co. v. Howard, 256 Ky. 363, 76 S.W.2d 246.

The appellant's contention that the trial court erred in overruling plaintiff's objection to the defendant's motion for a directed verdict at the conclusion of plaintiff's testimony, and erred in directing the jury to find for the defendant, seems equally well taken. The trial court felt that it would be improper to allow this case to go to the jury on the testimony of Officer Marrs because it concluded there was a complete absence of proof as to where the water actually originated on prior occasions, or what caused water to be frequently on the street in the vicinity of the Peacock premises. The trial court felt there was a complete absence of proof as to what caused the water to be on Berry Boulevard on the night of the accident, unless it came from a broken pipe on the Peacock premises, in which event the appellee would not be liable because it had no notice of the break. On the theory that it would be improper to allow the jury to speculate as to whether the water on this and prior occasions originated from a common artificial cause and to further speculate as to whether Peacock had knowledge of this condition and knew or should have known that it was contributing toward a hazardous obstruction in the street, the trial court directed the verdict for Peacock.

■■ The property holder, in conducting water from his premises to the street, must use ordinary care not to cause an obstruction or nuisance by which persons using the street, and in the exercise of ordinary care on their part, may be injured; and, in case such an obstruction or nuisance should arise suddenly or unexpectedly, it is the landlord's duty to remove the obstruction as soon as he has knowledge of its existence, or should have had knowledge by the use of ordinary care. Stephen's Adm'r v. Deickman, 158 Ky. 337, 164 S.W. 931, 51 L.R.A.,N.S., 309. Although the evidence in this case suggests that Peacock was creating a nuisance in the street, the appellant has made no contention of such a nuisance, and bases his case entirely on the theory that Peacock either knew or should have known of the water condition on its premises and was negligent in not correcting the situation. The appellant's entire case depends on presenting to the jury facts from which it might conclude that Peacock had notice, or should have had notice, that water was running from its premises into the street in such a manner as to possibly create a hazard. It is the consensus of the court that the testimony of Officer Marrs as to the collection of water in the street in front of the premises on previous occasions, at times when it had not collected in front of other similarly situated property along the boulevard, together with the evidence that the defendant-appellee admitted wetting the coal in its yard in order to settle the coal dust, was sufficient to put the defendant-appellee on notice that an unusual condition existed for which it might incur liability, and as a consequence the case should have been submitted to the jury for its findings. Since the appellee, owner of Peacock, says there was no broken pipe on her premises on the night of the accident, and since there was no evidence of rain or snow which might have caused surface water to flow from the premises, the

question of the origin of the water running from the Peacock premises on this occasion and other occasions and the question of whether Peacock had notice of such water and was negligent in not stopping its flow was properly a question for the jury.

The judgment is reversed.